## No. 11,462.

## MARTHA A. ASHLEY VS. ELISE SCHMALINSKI ET AL.

The law will not maintain a contract, the consent to which of one of the parties is the result of error as to the substance of the contract, the error being caused by artifices and fraudulent representations of the other party; or if the frauds, not his directly, have been participated in or made effective by him.   Civil Code, Arts. 1847, 1848; 1 Story's Equity, Secs. 189, 191, 192, 193, 195.

When the party seeking relief on grounds of fraud against an alleged unconscientious contract of exchange (has employed an agent on whose information respecting the property) the subject of the exchange the party depended, the fact of the employment of that agent, and that the contract has been executed on the faith of his information, will furnish no defence to the defendant, the other party to the contract, if by his acts and conduct he furnished the motive for the agent not to give his principal information actually withheld by the agent, and which, if given, would have prevented the execution of the contract, and thus protected the principal.

A PPEAL from the Tenth District Court, Parish of Rapides.
*Andrews, J.*

*W. H. Jack, H. H. White* and *M. H. Carver* Attorneys for Plaintiff and Appellant:

Plaintiff sues to annul and set aside a certain act of conveyance and for damages.

The gist of the complaint is that the defendants, Schmalinski, Strouss and Loomer, conspiring and colluding together for that purpose and to that end, did, by false and fraudulent representations and other artifices, mislead, deceive and defraud plaintiff as to the quantity, quality, character, situation and value of the property given in exchange for her property. That she actually received but four thousand and four and twenty-hundredths acres of these lands, when under the agreement she was to have received the entire body of lands owned by Mrs. Schmalinski on the south side of Red river, aggregating over five thousand acres, and that the diminished quantity so received by her is worthless and unsalable and wholly different in nature, quality, situation and value from what it was represented to be.

In all cases (and more especially in sales) where the information which would have destroyed the error has been withheld by the other party to the contract, it comes under the head of fraud and vitiates the contract. C. C., Arts. 1832, 1847.

Fraud vitiates everything, and whatever protean shape it may assume justice is left free to meet and thwart it. Lazarus vs. McQuirk, 42 An. 201; McReady & Burke vs. Schencke, 43 An. 479. Fraud as applied to contracts is the cause of an error bearing on a material part of the contract created or continued by artifice with design to obtain some unjust advantage to the one party or to cause a loss or inconvenience to the other; the error must be

on a material part of the contract, that is to· say such part as may be reasonably presumed to have influenced the party in making it, but it needs not to be on the principal cause of the contract, as it must be in case of simple error without artifice. C. C., Art. 1847.

The word artifice, as here employed, means not only "an assertion of what is false or a suppression of what is true," but is expressly extended to any and all means in themselves "calculated to produce a belief of what is false or an ignorance or disbelief of what is true." Silence on the part of one whose duty it is to speak is oftentimes the most unmistakable evidence of fraudulent intent, and is fully compassed by this definition of the code. C. C., Arts. 1847, 1832. Story's Eq., pp. 201, 202; 13 Wall.379; 37 An. 553; 5 An. 491; 33 An. 1364; 5 M. 306; 6 An. 426; 43 An. 964; 10 R. 5; 12 An. 369; 3 An. 379; 13 How. 230; 3 Cr. 264.

It confessedly appearing from the answer of defendant Schmalinski that she treated with defendant Strouss as special agent of the plaintiff in the negotiations culminating in the alleged act of exchange without any communication whatever with the plaintiff, and it further appearing by her act of sale to Strouss (made part of plaintiff's petition) that she on the same day deeded to the latter one thousand and seventy and thirty-hundredths acres of the same lands in consideration "of his services to her in effecting this exchange" with his own principal, it follows as a fact and in law that such an act was a corrupt circumvention of plaintiff and in effect bribery.

Aside from the secrecy attending this transaction, the absence of all knowledge of it by the plaintiff, the conveyance to Strouss is so self-condemnatory as to leave no doubt as to the conspiracy and fraud.

In the broad glare of such turpitude it would be equally idle to contend that any acts or representations made by this unfaithful agent would bind his principal or could in any way advance the cause of her who was *particeps criminis* in the unlawful act. The betrayal of his trust for a reward, *eo instanti*, put an end to his agency, and nothing he may have said and nothing he may have done can bind anybody but himself and the beneficiary of his traitorous act. The rules of agency bring no benefit to those who openly and flagrantly violate them for their own gain.

Ashley vs. Schmalinski et al.

*White & Thornton* Attorneys for Defendants and Appellees:

There is absolutely no evidence tending to show that either the defendant or her husband was party to any fraud or conspiracy by which the plaintiff was induced to make the exchange complained of.

Error as to the value of property purchased is not error of fact, but error of judgment; and the law furnishes no relief for an error of judgment. Citizens Bank of Louisiana vs. Clarence L. James, 26 An. 264.

Even fraudulent misrepresentations are not sufficient to annul a contract where the complaining party investigated the matter, or failed to do so when it could have been done. Kent's Commentaries, 7th Ed., Vol. II, p. 609; *Ibid.*, p. 618, and note A at bottom of page; *Ibid.*, pp. 622, 623; *Ibid.*, p. 625; Story's Eq. Jur., 3d Ed., Sec. 194; *Ibid.*, Secs. 149, 148, 197, 200 A; Domat's Civil Law, Cushing's Ed., p. 240, Secs. 406, 407; Revised Civil Code, Art. 2521; *Ibid.*, Art. 1847, pars. 3 and 9; 1 An. 389; 3 An. 4; 33 An. 1364; 13 Wall. 379.

As contracts of exchange can not be rescinded on account of lesion (R. C. C. Art. 1863), it follows that without proof of fraudulent conspiracy on the part of the defendant and further proof that the property acquired by the plaintiff is less valuable than that which she gave, she can neither annul the exchange nor compel the defendant to pay any damages.

The evidence fails to show that the property acquired by the plaintiff through the act of exchange is less valuable than the property which she parted with. She has therefore suffered no damages.

Even if the plaintiff could prove conspiracy and lesion, the contract can not be annulled, because an innocent third person has acquired a mortgage on the property given by plaintiff, and the *status quo* can not be restored.

As to this mortgage creditor, made defendant herein, the evidence utterly fails to prove fraudulent collusion.

---

The opinion of the court was delivered by

MILLER, J. The plaintiff, Martha A. Ashley, wife of W. H. Jack, brings this suit to set aside for fraud an exchange of her property in

the town of Alexandria, for certain lands in the parish of Rapides, of Elise Schmalinski, wife of Samuel Schmalinski. Besides Schmalinski and wife, the plaintiff joins as defendants Adolph Strouss and H. M. Loomer, charged to have been accomplices in the fraud, and B. Ehrstein, to whom Schmalinski and wife mortgaged the property conveyed to them in the exchange, the petition denying that Ehrstein is a *bona fide* holder, for value, of the mortgage note. The fraud alleged is, substantially, that the exchange of the plaintiff's property was procured by false and fraudulent representations and artifices of Strouss and Loomer, as to the character and value of the lands of Schmalinski and wife; that these lands were practically of no value, and plaintiff's dwelling was worth eight thousand dollars; that, beyond this, the plaintiff was defrauded of a large portion of the lands by a corrupt agreement between Strouss and Schmalinski, and that the lands so acquired by Strouss were all that possessed any value; and plaintiff charges that Strouss and Loomer being instruments of Schmalinski and wife, they all participated in the alleged fraudulent representations and artifices. The relief asked is the annulling of the exchange; that the transfer of plaintiff's property by Schmalinski and wife be enjoined; the mortgage to Ehrstein be set aside; that plaintiff recover certain taxes on the Schmalinski lands, and other expenses incident to the exchange, paid by plaintiff; and, finally, she asks for exemplary damages. Defendants answered, denying all allegations of fraud. The judgment of the lower court was against Strouss and Loomer for damages, and against plaintiff, maintaining the exchange and the mortgage. Plaintiff appeals.

The act sought to be set aside, of exchange of plaintiff's property for the Schmalinski lands, is of date the 30th January, 1892, and recites that each party gives her property for the other. The valuation of plaintiff's dwelling is fixed higher than the lands, the difference being adjusted by the stipulation that plaintiff should retain her dwelling for a few months after the date of the act.

The testimony shows that plaintiff, desirous of selling her dwelling in Alexandria, employed Strouss, one of the defendants, a real estate agent, to effect the sale. About the same time Loomer and the defendant were employed by Schmalinski and wife to sell their lands in the parish south of Red river. Of Loomer's employment by Schmalinski and wife, plaintiff was ignorant. Strouss conceived

the scheme of the exchange of the dwelling for the lands. He urged it on plaintiff, and represented the lands were heavily timbered and saleable, lay in a solid body, and were five or six thousand acres in extent. Strouss enforced his fascinating statement by suggesting the employment of Loomer to examine and report as to the lands.

Loomer, if not then, soon after became the partner of Strouss, and the commissions on the exchange thereafter effected of plaintiff's dwelling were shared between Loomer and Strouss. The plaintiff, entirely ignorant on the subject, stated she would have to rely on the information given her, and the result was, Loomer proceeded on his mission of examination. His account to plaintiff on his return was even more favorable than that of Strouss. Loomer's report was in substance, that the lands were heavily timbered with white oak and other trees of value, lay convenient to the railroad in a solid body; that the timber could be readily sold at good prices: when cleared the lands were adapted to farming purposes— worth ten dollars per acre, could readily be disposed of, and he and Strouss concurred in the assurance that she should get all the lands. Loomer emphasized his account by the statement that the lands were high and free from overflow. True, the testimony of these representations comes from plaintiff. We have weighed the circumstance of her interest, and of the contradiction her testimony encounters from that of Strouss and Loomer. Her narration, clear, consistent and positive, finds corroboration, we think, in other parts of the record. As to the contradiction of Loomer and Strouss, their parts in the transactions connected with the litigation, we think, give little, if any, weight to their statements. Our conclusion is the representations were made as detailed by plaintiff. Our conclusion is, also, the representations were false, and designedly false. There is some testimony tending to show a speculative value of the lands, based on the hope of a perfect levee system and other possibilities of the future. On the other hand there is testimony far more persuasive, that under any conditions the cost of reclaiming the lands places that result beyond rational probability. As to the timber, it is put beyond dispute that there is practically, no growth on the lands of the kinds represented to plaintiff. The lands are shown to be low, swampy and overflowed; of course, utterly unfit for cultivation, or capable of being fitted for cultiva-

tion, except at a cost none could incur. It is shown, too, that they do not lie in a solid body, nor, for the greater portion at least, convenient to the railroad. This testimony, falsifying in all material respects the representations on the faith of which plaintiff was induced to exchange her dwelling for the lands, comes from surveyors and others qualified to speak, and creates the absolute conviction of the error caused by the false representations under which plaintiff acted.

The judgment of the lower court decrees that Strouss and Loomer pay damages, and thus condemns their conduct but holds there is no basis to disturb the exchange. We have given the most careful attention to the case exhibited with respect to Schmalinski and wife, and reach a conclusion different from that of the lower court. It is in evidence that on Loomer's visit of inspection of the lands he was accompanied by Baker, who gave his testimony as a witness. Baker was asked by Strouss to examine the lands, and at his instance went with Loomer. On Baker's return he gave Strouss the true condition of these lands, and that conformed to the testimony produced by plaintiff. Bad as the lands were reported by Baker, Strouss testifies he " colored " it, and made it, as he expresses it, as " blue " as possible. Thus the false report of the lands was given to plaintiff by Loomer to induce her to make the exchange, and the true report exhibiting the worthless character of the lands was placed before Schmalinski. Srouss practically directed both reports. When Baker's report was put before Schmalinski it elicited from him the comment, " he did not think the lands were as bad as that," but he was stimulated to no action or forbearance with respect to the exchange into which the plaintiff was being led by the false report then before her. But the record shows that in this condition, the true report before Schmalinski and the false report before plaintiff, at Strouss' request Schmalinski made him a gift of one thousand acres of the land, consummated by the conveyance a day or two after, the conveyance reciting Strouss' services in effecting the exchange as the motive for the gift. The general rule, as claimed by counsel for defendant, is that the law requires the parties to the contract of sale, to inform themselves as to the property, and does not exact disclosures from one to the other (Story's Equity, Sec. 200). This principle of law supposes equal opportunities of information, but is never applied to sustain unconscientious advantage.

There was here no such equality of positions. The full knowledge of the character of the lands, if not possessed before, and at all times, was certainly imparted to Schmalinski by Baker's report. It was given to Schmalinski and withheld from plaintiff by the treachery of the agent on whom she implicitly relied for information. If a line of that report had reached her the lands would have been utterly rejected as an exchange for her dwelling. With the full knowledge on the subject afforded Schmalinski by Baker's report withheld from plaintiff, to whom it should have been furnished by Strouss, and if furnished would have protected her against the sacrifice of her property, in our opinion, it is unconscientious to permit Schmalinski to profit by the exchange. Then, too, he knew he was dealing with Strouss as an agent for the plaintiff. The gift to that agent, and the purpose and nature of his communications, was notice, we think, by necessary implication, of the violation of the duty of the agent to his principal. With notice of this treachery of the agent and with abundant reasons at least, for Schmalinski to suspect the fraud shown by the record practised on the plaintiff by the agent to bring about this exchange, we can not distinguish the position of Schmalinski from that of one who had actual knowledge of the fraud, and of course no one with this knowledge could profit by the exchange. In this view we think Schmalinski is affected with responsibility for the false representations and artifices of Strouss and Loomer, which led plaintiff to give her dwelling for the lands.

There is another view. In her conferences with Strouss, it was the plaintiff's understanding she was to receive all the Schmalinski lands south of Red river, in all five thousand or six thousand acres. It was afterward falsely represented to her that there were only four thousand acres. This was in aid of the gift of the one thousand acres, Strouss proposed to secure for himself. A paper was prepared, reciting that Schmalinski bound himself to convey four thousand acres for the plaintiff's dwelling. Schmalinski signed it, and, as we gather from Strouss' testimony, in that condition was submitted to plaintiff and assented to by her. There is some discrepancy in the briefs whether plaintiff ever saw the paper; but the point is not of importance. It is quite certain, she acted on the belief in the representation that four thousand acres was the extent of Schmalinski's ownership. But when Baker's report was

laid before Schmalinski, with the menace of the defeat of the ex-
change if the report became known to plaintiff, " with some persua-
sion " Strouss testifies Schmalinski was induced to agree to sell four
thousand eight hundred acres, and four thousand in the paper was
changed to four thousand eight hundred, and this change was without
plaintiff's knowledge or consent.    If the paper had been submitted
to plaintiff, and this alteration was after the submission, that cir-
cumstance would certainly not put the transactions in a better light.
Now, if Schmalinski was willing to part with four thousand eight
hundred acres instead of four thousand for the plaintiff's dwelling,
the plaintiff should have been the recipient, not Strouss, who had
assured her that she should get all the lands.    The effect of the
transaction was to deprive plaintiff of a large portion of that she had
been assured she was to get.    It was a fraud on the part of Strouss.
Was not the transaction of a nature to suggest the fraud to any one?
The alteration of a paper affecting another's interest without his
knowledge, is out of the usual course.    Strouss testifies, the altered
paper was that signed by Schmalinski, but it appears it was shown
to her.    Another paper to same purport, Strouss testifies, was signed
by her.    Both read that four thousand acres of the land were to be
conveyed for her dwelling.    And her assent to either or both was
procured on the faith of the false representation that Schmalinski
owned only four thousand acres.    Both papers, it is testified, recited
the conveyance of the lands was to be to Strouss, but announced were
to be in exchange for plaintiff's dwelling.    The relation of plaintiff as
principal, who was to receive the land, and Strouss as her agent, was
plain and known to Schmalinski.    Strouss again testifies when the
deeds, one to plaintiff and the other to her agent, were prepared,
and before her signature, Schmalinski stated he thought plaintiff was
to get all the land.    But Strouss answered it was all agreed with
plaintiff and it made no difference if Schmalinski got her dwelling.
We think Schmalinski's remark in this connection indicated his ap-
preciation all was not right, and he should have adhered to his thought
and not yielded to Strouss' assurance.    The result of Schmalinski's
acquiescence was to contribute to the fraud of plaintiff's agent, and
under circumstances from which the fraud should have been
inferred.    Then, too, the gift of the lands to Strouss, in direct con-
nection with Baker's report of their condition, implied Strouss was
not to submit that report to his principal.    It was his duty to give

plaintiff the information of the true conditions of the lands. The gift impliedly exacted the pledge that duty should not be fulfilled. Strouss conformed to the pledge and Schmalinski got the dwelling. The tendency and effect of the gift was to close the mouth of Strouss in respect to the communications duty required he should make to his principal. Schmalinski in this view can not urge that plaintiff has no claim to relief because she had an agent. The agent was in effect controlled by the gift of Schmalinski, and not by duty. In this view, too, we think Schmalinski is not free from responsibility for the success of the false representations under which plaintiff parted with her property.

The grounds we have announced dispose of the case, involving in the main questions of fact; we might have simply announced our conclusions, but that would not have been consistent with the right of the litigant to know the grounds of decision. There are phases of the litigation on which we have not touched, because not necessary. The case is presented by defendants in this court without reference to any questions of the admissibility of the testimony. We have endeavored to give the requisite attention to all parts of the voluminous record, and to weigh with care the argument of the defence, and if there are points of that argument not discussed in the opinion it is not because they have escaped our attention, but that the case is dominated by the views we have expressed. The controversy, in our opinion, does not at all involve the question of the value of plaintiff's dwelling. Hence, we have excluded from consideration the testimony and discussion on that point. The issue is whether the lands were of the character represented. The effect of the alleged deficiency and non-warranty in respect to property given in exchange, is a question not free from difficulty, but not necessary to be considered. There is a question raised whether the deed to Strouss of the one thousand acres is in issue, plaintiff contending she asked no relief on that ground. We think the issue is substantially made in plaintiff's last supplemental petition; the general issue was enough in the answer on this, and, for that matter, perhaps, on all points. Besides, the evidence on that point is in the record. We take occasion to say that, in our opinion, the insertion of the non-warranty clause affords no room for any comment, with respect to counsel, if, indeed, any unfavorable comment was intended.

The law will not hold a party bound when his consent is the result of error bearing on the substance of the contract, caused by fraudulent representations of the other party to the contract, or if not made directly by the other party, yet, by his act and conduct, he has contributed to make effective the false representations. In our opinion, plaintiff, in respect to the wrong of which she complains and the relief she seeks, is within this principle of law and the articles of the code. C. C., Art. 1847, 1848; 1 Story's Equity Jur., Secs. 189, 191, 192-195.

As to the mortgage of Ehrstein, in our opinion, there is no basis to disturb it. We shall endeavor to secure plaintiff against that mortgage.

It is therefore ordered, adjudged and decreed that the judgment of the lower court, in so far as it dismisses plaintiff's demands against Elise Schmalinski and husband, be avoided and reversed; that the exchange of plaintiff's property for the lands of said Elise Schmalinski, by act of date 30th January, 1892, before Hooe, notary, be and it is hereby annulled, and the parties to said act are hereby reinstated in the ownership, the plaintiff of her dwelling and said Elise Schmalinski of her land, as that ownership existed before said act; that plaintiff do have and recover from said Elise Schmalinski and husband two hundred dollars, taxes paid on said lands, with interest from date of payment; that Samuel Schmalinski and wife do surrender to plaintiff, within twenty days from the filing of the mandate in the lower court, the note made by them of date the 10th of May, 1892, and secured by mortgage on plaintiff's dwelling, or, in default thereof, that plaintiff do have and recover from said Samuel Schmalinski and wife one thousand dollars, with interest from 1st of January, 1893, the amount due on said note; that, in other respects, the judgment of the lower court be affirmed and that defendants pay costs in both courts.