## No. 8771.
## Orleans Appeal.

## JOHN L. COLAS v. ARMSTRONG DONALDSON ET AL.

(January 5, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Error and Mistake— Par. 8.**
Where the actual property, exclusive of buildings or improvements, acquired by "A" is shown to be different and much less in area and boundaries than that which he intended to purchase; and he in turn conveys to "B", under similar erroneous descriptions, both parties only learning of the error after "B's" acquisi-

tion, the real motive supposedly prompting the later or subsequent purchase by "B", is wholly lacking. Under such conditions, an action of nullity brought by "B" will be maintained, though prejudicial to "A", the party first in error. (Civil Code, Art. 1824, 1847, Par. 9. Editor's note.)

2. **Louisiana Digest—Bills and Notes—Par. 44;. Mortgages—Par. 31.**

Judicial annulment of a sale of real estate carries with it the cancellation of a mortgage note given in part consideration of the purchase price, and which is in the hands of one not an innocent third party.

3. **Louisiana Digest—Estoppel—Par. 27, 13.**

Estoppel which can usually be pleaded against the repudiation of an unambiguous executed contract, cannot avail the pleader when he himself is shown to have tendered a title not descriptive of the property about which both the buyer and seller have negotiated.

Appeal from Civil District Court for the Parish of Orleans, Div. "D"; Hon. Porter Parker, Judge.

This is a suit for the rescission of sale of real estate.

There was judgment for plaintiff and both defendants appealed.

Judgment amended and affirmed.

Rene A. Viosca, attorney for plaintiff and appellee.

Wm. Winans Wall, attorney for, defendant and appellant.

BELL, J. Armstrong Donaldson, the principal defendant and appellant in this suit, has died since the appeal herein taken. His widow and heirs have been made parties defendant with Joseph F. Ebert, the other defendants and appellant.

This is an action for rescission of sale of certain real estate; for the return of the cash portion of the purchase price, with certain damages; for the return also of a certain mortgage and vendor's lien note, representing the balance of the purchase price, and for an order restraining the holder of said note from transferring or disposing thereof. From a judgment in favor of plaintiff granting all of the relief prayed for and denying to one of the defendants his reconventional demand, both defendants have appealed.

This whole proceeding is based upon the dominant allegation that the property conveyed by deed, was, through error of fact, not that property which plaintiff actually intended to purchase. Defendants have pleaded by filing a joint answer, in which they admit that the property described in plaintiff's petition was sold for the price and terms stated. They deny all other allegations of the petition, except to further admit that Joseph F. Ebert negotiated the sale of the property, as Donaldson's agent, and that Ebert took the vendor's lien note and paid cash therefor at the time of the execution of the sale. The real defense is that Donaldson's acquisition of the property conveyed was by deed, accompanied by actual physical and corporeal possession, and that the same property was in turn sold and delivered to plaintiff; that, therefore, there has been no breach of warranty on the part of Donaldson, or his co-defendant, even though the City of New Orleans might have disturbed or evicted plaintiff by paving, drainage or opening streets into or upon the property deeded by Donaldson to plaintiff. It is then averred in the answer by Joseph F. Ebert, assuming the position of plaintiff in reconvention, that he is the bona fide holder of the mortgage note for $300.00, and that he should have judgment against plaintiff for said amount, with interest and attorney's fees.

On May 24, 1920, plaintiff and defendant, Donaldson, entered into a written agreement whereby the latter, through his authorized real estate agent, Ebert, agreed to sell to plaintiff property described as "No. 1921 St. Bernard Avenue, corner Johnson", in the City of New Orleans, for the sum of $1,400, by act of sale before Felix J. Dreyfous, Notary Public. This document was

signed by plaintiff and Donaldson. On June 8, 1920, before the above-named Notary, an act of sale intended by both parties to relate to 1921 St. Bernard Avenue, was executed and signed by both plaintiff and Donaldson. The notarial description of this property, as set forth in the act containing the usual clauses of warranty, is as follows:

"A certain portion of ground, of irregular shape, together with all the buildings and improvements thereon and all the appurtenances thereunto belonging, situated in the Third District of this City, in that part thereof known as the Faubourg Gueno, and forming part of the lot of ground designated by the No. 2 of Square 128 (now Square No. 904), bounded by Johnson, Prieur, D'Abadie and Onzaga Streets, as per plan made by J. A. Penyo, dated January 3, 1840, and deposited in the office of Felix Percy, late Notary of this City. Said portion of ground measures in American measure 93' front on D'Abadie Street, 107' front on the continuation of Canal, St. Bernard, and 45' 6" in depth on the line separating it from lot No. 1, all measurements being more or less. The aforesaid lot No. 2 being part of a larger portion of ground designated by the No. 28 on a plan by L. Bringier, deposited in the office of Octave de Armas, late Notary, by an Act dated June 20, 1835. It is here noted for more clearness, that since the opening of St. Bernard Avenue, the above described property fronts on St. Bernard Avenue, and is bounded in the rear by London Avenue, D'Abadie Street being now closed to that point."

Donaldson had purchased the property above described about three weeks prior to the time he sold it to plaintiff, and admitted in his testimony at the trial of this case that before acquiring it, he had personally seen the property and was entirely familiar with the house or building known as 1921 St. Bernard Avenue, and with all of the fences which enclosed the property, and with the streets which definitely fixed its location; that when he bought from his vendor, as well as when he sold to plaintiff, he thought he was buying and selling every bit of ground and improvements within the

fence lines surrounding the property No. 1921 St. Bernard Avenue, and which had, subsequent to Donaldson's purchase, been placarded for sale by his agent, Ebert. This agent also testified that in acting for Donaldson he intended to sell to plaintiff the particular house as it was and the ground included in the fences as they stood, and that he knew there were four fence-lines surrounding the property. Donaldson is shown by the evidence to have also known that the property was enclosed within four fence-lines, for he admits having visited the property and having "stepped off" its entire surroundings, as the best method, in his opinion, of ascertaining the lineal measurements of the property.

It is further shown by the testimony of plaintiff's wife, who examined the property bearing Ebert's "For Sale" sign, as well as by the testimony of the plaintiff himself, who had called at Ebert's office for the purpose of purchasing the property, that it was plainly understood in the negotiations with Ebert that the property offered for account of Donaldson was the identical property, as to house and grounds and fence boundaries, as that which was visualized to all parties by the physical property and its surroundings.

The property was sold without any misrepresentations or any intent to defraud on the part of any of the parties involved in the transaction. Nevertheless, the facts disclosed by the record and by the surveys, deeds, etc., indicate that the property actually conveyed by deed was not that contemplated by either the buyer or the seller.

The triangular-shaped property described in the deed (though therein declared as of irregular shape) and appearing on the plan by Seghers, Deputy City Surveyor, shows a projection of a line into the avenue or street fronting the house, and it further appears that the rear or base line of this triangular property projects and cuts through

the front third of the house, so that the remaining two-thirds of the house projects into and extends also to the middle of D'Abadie Street. It cannot be conceived that the plaintiff, who, unlike Donaldson, was negotiating in regard to this property for the first time, could have contemplated such an absurd and impossible situation as has resulted from his purchase. It should be noted that the error into which both Donaldson and the plaintiff had fallen regarding the property which they thought was being sold, did not come to the knowledge of either until the plaintiff discovered that the City of New Orleans had dug or installed a drainage pipe in the rear of the property involved in the sale. It is also true that such knowledge arose after the act of sale between Donaldson and the plaintiff had been passed.

The property designated, not only in the deed now before us, but in a deed to Donaldson from his vendor, and in another deed of so ancient an origin as April 20, 1852, is described as "a certain portion of ground of irregular shape ("une portion de terrain de forme irreguliere"). · The survey which plaintiff caused to be made after his discovering the error of fact upon which this suit is predicated, distinctly shows that the property which he thought he was buying was of irregular shape, that is, neither rectangular nor triangular, but such shape as it could only have taken if the house on which it was situated was to be enclosed within the fence lines seen and visualized by the parties.

It cannot be doubted that Donaldson, having intended, as he says he did, to purchase from his vendor the same house and irregular portion of ground which he agreed to sell to plaintiff, could have discovered by casual comparison of measurements found in his vendor's deed with those known by Donaldson when he "stepped off" the property, that his actual acquisition was very much less in area and quite different in shape from that which he intended to buy and which he ultimately intended to convey. Whether negligence be charged or imputed to one or all of the litigants involved, it is clear, Donaldson should have known when acquiring the property conveyed in his deed, that he was not buying anything nearly approaching that which he had seen, examined and visualized. The initial error was, therefore, with Donaldson, and under the well-established principle of equity, that he who is first at fault must bear the burden of the ultimate loss suffered by himself and others, it follows that the relief asked for by the plaintiff, with such amendments as are hereinafter decreed, should be granted.

In the instant case there is abundant justification for the legal presumption that the minds of the parties in this transaction have never met. The motive for making the contract, at least as to the plaintiff (the most innocent of the parties concerned) is wholly lacking, and hence, his consent—the most essential element in a contract of sale—cannot be held to have legally existed.

The estoppel which may be effectively and equitably pleaded against repudiation of an unambiguous, written contract, duly executed, cannot avail him who, pleading such defense, is shown to have tendered, however innocently, a defective title, not descriptive of the property which he himself intended to convey. One cannot be held at law or in equity to a bargain in which the very motive impelling the agreement is wholly wanting. This is specially true where, to enforce or uphold a contract of sale would impel the judicial presumption that the purchaser wilfully contracted to also involve himself into litigious difficulties, the inevitable consequences of which he was bound to have foreseen.

It cannot be imagined for an instant, that

in the present case, where the purchaser was a humble wagon driver of a large mercantile establishment, that he recklessly elected to purchase, with his small savings, a front yard which he knew to be destined to public use as a sidewalk or public avenue, or a back lot forming part of a rear street upon which two-thirds of his humble home was to have no other place to stand pending doubtful litigation with arbitrary or merciless trespasser.

We find ample authority justifying the conclusions of the learned trial judge, whose judgment we approve with slight amendments. The Revised Civil Code, Article 1824, is to the following effect:

"The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent."

In Schmitze vs. Peterson, 113 La. 134, 36 South. 915. the Supreme Court, affirming a judgment of the District and Appellate Court. ordered a rescission of the sale and a return of the purchase price where it was shown that the agent of the vendor misled the purchaser by pointing out to him other property than that intended to be conveyed. The doctrine ennunciated in the syllabus of the cited case is applicable, in our opinion, to the facts of the present case, and reads as follows:

"The law will not maintain a contract, the consent to which, of one of the parties is the result of error as to the substance of the contract, the error being caused by false representations of the other party or where the error, if not caused by him directly, has been participated in and made effective by him. Ashley. vs. Schmaliński, 46 La. Ann. 499, 15 South. 1; Civ. Code, Arts. 1824, 1847, Par. 9."

In Pontchartrain Railroad Co. vs. Durel, 6 La. 481 (O. S.), page 60, the Court held:

"Where the vendor sells property at public auction without title to even a small part of it, the vendor, to whom the adjudication is made, cannot be required to complete the sale and accept security.
* * * * *
"It is of no avail that the vendor can give a good title to all but a very small portion of the property sold. The buyer must have what he bought and every part of it."

In the very recent case of Jacobs vs. Freyhan et al., 156 La. 585, 100 So. Rep., page 728, the following ruling was made:

"Defendants take the position that the property which they obligated themselves to convey was described by reference to their title papers; that the frontage on Dufossat Street called for thereby is there, and that it can make no difference that an actual survey showed the improvements to encroach upon adjoining property to the extent mentioned. However, it is not disputed that the agent of the seller took the prospective purchaser to the premises, pointed out the property as that bearing municipal numbers, including No. 1648 Dufossat Street, with the fences and improvements situated as they appeared upon the ground. Neither can there be any doubt but that he thought he was buying all the property within those enclosures. In these circumstances, to require him to take the property in the condition which the survey showed it to be, would be to make for him a contract by judicial mandate which he clearly never intended to enter into, and which, as evidenced by this litigation and the efforts to straighten out the title so that he might comply, he would not have made. There was, therefore, no meeting of the minds, or at least an error of fact as to a material part of the agreement which renders it ineffective as to plaintiff."

We find in the present case that Ebert, the co-defendant and plaintiff in reconvention, having been at the time he purchased the mortgage note, fully informed of the circumstances of this case, and having known exactly what property plaintiff intended to buy, he cannot be decreed an innocent holder for value before maturity of the note upon which he now bases his

demand in reconvention. The evidence shows that he was present, like the owner, at the passing of the act; that he, like the vendor for whom he acted, had visualized the whole property which his principal had really intended to convey, and that he posted for sale and described the property to be just such property as the purchaser believed he was to get. Under these circumstances, the mortgage note cannot be upheld as security for the unpaid portion of that property, which was not intended to be conveyed. The note and the mortgage, with interest and attorney's fees as therein stipulated, therefore should be cancelled, with the act of sale from which it has arisen, but equity demands that plaintiff in the main action should be condemned to pay unto Ebert, as plaintiff in reconvention, the face value of the note, to-wit: $300.00, with legal interest thereon from June 8, 1920, until paid.

On the other hand, we are of the opinion that plaintiff should recover against the widow and heirs of defendant, Donaldson, a judgment annulling the sale to the property as described in plaintiff's petition, and that there should be judgment condemning these substituted parties jointly to the payment unto plaintiff of the total purchase price, to-wit, $1,400.00. Only legal interest on $300 of this amount should be allowed, because we are of the opinion that Donaldson's use of the $1,100 or cash, since the date of the sale, is practically off-set by the plaintiff's enjoyment and occupancy of the property for an equal period. We do not think that plaintiff should recover damages for attorney's fees, nor otherwise, but he should be reimbursed for the actual costs advanced by him in the expenses incident to the passing of the act of sale, to-wit, $30.00. He should also be reimbursed for city taxes for the year 1921, which were paid by him, and which amount to $24.53.

The judgment appealed from should be affirmed, with amendments as herein noted.

It is, therefore, ordered that there now be judgment in favor of plaintiff, John L. Colas, jointly against Mrs. Mathilda Drewes, widow of Armstrong Donaldson, and Otto D. Donaldson, George C. Donaldson, Proveaux D. Donaldson, Ruth S. Donaldson, Esther Virginia Donaldson and Naomi Mathilda Donaldson, in the full sum of Fourteen Hundred and Fifty-four Dollars, 53-100 ($1,454.53), with legal interest on $300.00 thereof from June 8, 1920, until paid, and for all costs in both courts.

It is further ordered that there be judgment in favor of the plaintiff, John L. Colas, against the above-named defendants, cancelling the act of sale and mortgage between Armstrong Donaldson and John L. Colas, passed before Felix J. Dreyfous, Notary Public, on the 8th day of June, 1920, and which act is registered in the Conveyance Office Book 322, Folio 489, and the Mortgage Office Book 1244, Folio 380, of the Parish of Orleans.

It is further ordered that there be judgment in favor of the plaintiff, John L. Colas, and against Joseph F. Ebert, restraining the said Ebert from disposing of the mortgage note now in his hands and relating to the act of sale and mortgage hereinabove noted, and that said note, with interest and attorney's fees, as therein stipulated, be declared null and void as a vendor's lien or mortgage note bearing on the property described in the mortgage recorded in Mortgage Office Book 1244, Folio 380, of the Parish of Orleans.

It is further ordered that there be judgment in reconvention in favor of Joseph F. Ebert, and against the defendant in reconvention, John L. Colas, in the sum of Three Hundred Dollars ($300.00), with legal interest thereon from June 8, 1920, until paid.