ANZELMO v. INDUSTRIAL CITY CO., INC.

———

(Apr. 25, 1927.  Opinion and Decree.)

———

(*Syllabus by the Court*)

1.  **Louisiana Digest—Fraud—Par. 2; Error and Mistake—Par. 16.**

The law will not maintain a contract, where one of the parties has signed the contract in error as to the substance thereof, the error being caused by the fraudulent representations of the agent of the other party.

Appeal from Civil District Court, Division "D".  Hon. Porter Parker, Judge.

Action by Gaetano Anzelmo against Industrial City Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Terriberry, Rice & Young, A. R. Martinez, of New Orleans, attorneys for plaintiff, appellee.

Jos. Casey, Jno. Dymond, Jr., R. J. Wienmann, of New Orleans, attorneys for defendant, appellant.

## OPINION

JONES, J.  This is a suit for rescission of sale of two squares of ground in St. Bernard Parish in Versailles subdivision and the return of one thousand ($1000.00) dollars paid on purchase price, on the ground of fraud and misrepresentation.

Plaintiff alleges that he told defendant's agent, Robinson, that he wanted land within twelve squares of the main road running from New Orleans to Point-a-la-Hache and said agent took him on the Paris Road about twelve squares from the main road in front of the Mistrot house and told him that the squares involved herein were located about twenty-five feet beyond the Mistrot house; that he wanted high land and signed a contract on February 27, 1922, agreeing to purchase two squares, 548 and 545, for two thousand ($2000.00) dollars on terms of six hundred ($600.00) dollars cash and forty ($40.00) dollars per month on the unpaid balance; that he is of Italian birth and unable to read English well and believed the contract to be in accordance with the representation of the agent as to the location of the squares; that he made repeated demands of the agent and finally of the president of the defendant company to locate his squares, but finally ascertained after he paid one thousand ($1000.00) dollars that the squares 545 and 548, as shown on the map referred to in the contract as made by Jos. Pille and protracted by A. C. Duval, C. E., were at least twenty-four squares from the main road, entirely covered by water and inaccessible; that he has since learned that defendant had falsely and fraudulently misrepresented the land to him.

Defendant filed an exception of no cause of action which was overruled and then an answer admitting the sale and the payment of one thousand ($1000.00) dollars on the purchase price, but denied all fraud, misrepresentations or error.

There was judgment for plaintiff and defendant has appealed.

The plaintiff, who was keeping a grocery store in this city when he made the contract, testified that he could barely write his name and could not read English; that

for many years he had operated a truck farm in St. Bernard Parish and that he was buying these two squares solely for the purpose of building a house and having a truck farm again and this testimony is corroborated by Robinson (tr. p. 41) as follows:

"Q. That he wanted to set out a farm, did he?

"A. Yes.

"Q. All that ground that you showed him was good ground?

"A. All the ground there is good, there is a high ridge back there.

"Q. All highland?

"A. Supposed to be, yes, sir.

"Q. All back ground there where you went with Mr. Anzelmo there are truck farms today?

"A. Partly truck farms, yes, sir."

And on page 31 as follows:

"Q. Didn't you tell me that the land that you intended to sell Mr. Anzelmo was high, dry land?

"A. Well, all that land is supposed to be high and dry.

"Q. Answer my question. Didn't you tell me that the land you were to sell to Mr. Anzelmo was to be high, dry land?

"A. I remember talking to you and I told you about the ground. I said I sold it to him as an investment; he wanted to get good ground, naturally.

"Q. Didn't you tell me that was the only sort of land that you wanted to sell to Mr. Anzelmo?

"A. Certainly, I said I would like to see him get good ground, naturally so."

Anzelmo further testified that the land that he intended to purchase was to be situated approximately twelve squares from the main or St. Bernard-Point-a-la-Hache road, and immediately adjoining the property occupied by one John Mistrot; that the Mistrot property is about twelve squares from the St. Bernard-Point-a-la-Hache Highway. His testimony further shows that both prior to the making of the contract and after its making, the said agent accompanied him on the Paris Road by Mistrot's house and advised him that the squares he would purchase would be just adjoining Mistrot's property at that location. The record further shows that the property situated near the Mistrot property is used for farming purposes.

There is a conflict in the testimony of Anzelmo and of Robinson as to the time when Anzelmo was shown the property, Anzelmo contending that on several occasions he and Robinson visited the property while crayfishing, and each time Robinson pointed out the approximate location of the squares. Some of these purported locations, Anzelmo says, took place prior to the making of the contract, while Robinson contends that he only pointed the approximate location after the contract was signed. However, Robinson admits that he had been on crayfishing parties with Anzelmo, and he further admits that they did stop by a white house, and that he pointed out the property to Anzelmo as being in the vicinity of that house in a westerly direction.

Robinson testifies that he read the contract to Anzelmo and showed him a map of the property, but Anzelmo denies this and as Robinson was getting thirty per cent commission and in this instance received the entire cash payment of six hundred ($600.00) dollars, we think that he had great inducements to mislead Anzelmo as to the location of the land. We do not believe that the plaintiff would have considered the proposition for one moment if he had known that the squares in question were inaccessible, were frequently under water and were utterly useless for farming purposes, because the record shows that plaintiff has but little and was not in a position to speculate on possibilities of enhanced value due to a possible drainage district in the future.

The president of the defendant company, who was not present at the time the land was pointed out, frankly told the plaintiff when he came to his office some months after the contract was made that he could not definitely locate the squares himself and that a survey would be necessary.

In this statement he is sustained by the contract itself, which provides that the sale is made "as per map made by Jos. Pille, protracted by A. C. Duval, Jr., C. E."

A careful reading of the record convinces us that Anzelmo would not have had the slightest idea what was meant by the above-quoted language, even if it were read to him, which is by no means certain. He wanted trucking land and he thought he was buying it and Robinson certainly encouraged him to believe that he was getting such land.

Defendant's attorney objected to all evidence as to verbal statements of the agent, Robinson, on the ground that the contract provides that "no agent is authorized to make any other agreement than is evidenced by this contract", but the judge of the lower court properly overruled the objection as fraud and misrepresentation are charged in the petition.

The Supreme Court has passed upon a case in which the facts were almost identical with those in the instant case, in the matter of Schmitz vs. Peterson, et al., 113 La. 134, 36 So. 915. In that case the plaintiff signed a contract, agreeing to purchase certain land that was described in the contract, which in truth and fact was not the land that had been pointed out to him by defendant's agent, and, consequently, the contract was signed by him through error, and this suit was brought to set aside the contract. In that case, as in the instant case, the land pointed out by defendant's agent was of considerable value, while the land described in the instrument of writing was not only different from that pointed out by the agent, but was inferior and practically worthless. The defendants in that case also attempted to escape liability on the ground that they were not responsible for the defendants' agent's act in pointing out the wrong tract, as he was not authorized to do so, and the principals did not know when they signed the act that the agent had pointed out the land. The court held:

"Lewis (the agent) throughout the whole transaction acted for them. The particular act of pointing out the property cannot be detached from his or other acts and be repudiated while defendants avail themselves of the error itself. It is very certain that the minds of the parties never met upon the object or thing which was made to appear as the object contracted for.

"In Ashley vs. Schmalinski, 46 La. Ann. 499, 15 South. 1, this court said that the law will maintain a contract, the consent to which of one of the parties is the result of error as to the substance of the contract, the error being caused by artifices and fraudulent representations of the other party, or if fraud, not his directly, has been participated in and made effective by him. Article 1824, Civil Code, declared that the reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because, the motive being that which determines the will, if there be no such cause where one is supposed to exist, or if it be falsely represented, there can be no valid consent."

Clearly, the law in that case governs the instant one, for, as above stated, the thing that induced Mr. Anzelmo to purchase land in St. Bernard Parish was that it should be high and dry, at a distance approximately twelve squares from the main St. Bernard Road, so that he could use the same for farming purposes. The instant case is stronger than the one cited above, because

the defendant's agent admits in his testimony that he only intended to sell Anzelmo high and dry land. He further admitted that the land that he pointed out to Anzelmo was high and dry, and that it was not located at about twenty-eight squares from the main St. Bernard Road, which is the approximate location of squares 545 and 548. Consequently, there never was a meeting of the minds of the parties from the very inception of the contract.

See also the following:

Jacobs vs. Freyhan, 156 La. 584, 100 So. 726.

Newman vs. Scarborough, 115 La. 864, 40 So. 248.

Colas vs. Donaldson, 1 La. App. 389.

Lawrence vs. Mount Zion Church, 1 La. App. 404.

For the above reasons the judgment is affirmed.