(100 South. 726)

No. 26458.

JACOBS v. FREYHAN et al.

(March 31, 1924. Rehearing Denied by Division C May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Vendor and purchaser** ⬤�netwise135(2), 334(5)— **Sales; deposit held recoverable by purchaser where property encroached on adjoining owner.**

Where plaintiff agreed to purchase seven single houses, designated by numbers, for certain lump, he could not be compelled to accept property where lot of one house and part of house itself encroached on adjoining property, there being an error of fact rendering the agreement ineffective as to plaintiff, and hence he was entitled to recover deposit under contract.

2. **Vendor and purchaser** ⬤⟶135(2)—**Sales; that encroachment on adjoining land constituted continuous servitude held not to cure defect in title.**

Where plaintiff agreed to purchase premises by municipal numbers after they had been pointed out, with improvements and inclosures, and it appeared that property in part encroached on adjoining lands, plaintiff could not be compelled to perform on ground that encroachment constituted servitude on adjoining estate by destination du père de famille, giving continuous right of occupancy, in view of Civ. Code, arts. 1819, 1823.

3. **Vendor and purchaser** ⬤⟶341(5)—**Sales; 1 per cent. of purchase price held recoverable as attorney's fees for examining title.**

Where purchaser refused to perform because of defect in title, he could recover from vendors 1 per cent. of purchase price as compensation for attorney examining title.

4. **Vendor and purchaser** ⬤⟶341(5)—**Sales; outlay for certificates held recoverable by purchaser on rejecting title.**

Where purchase of land was to be completed before notary of purchaser's selection, he could on rejecting title recover from vendor what he had to pay for procuring certificates necessary to consummation of transaction.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Leon Jacobs against Mrs. Sarah Freyhan and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellants.

A. D. Danziger, of New Orleans (P. H. Stern, of New Orleans, of counsel), for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

DAWKINS, J. Plaintiff and defendants entered into the following agreement covering certain real property in the city of New Orleans, to wit:

"New Orleans, La., June 20, 1923.
"I offer and agree to purchase the seven single two stories 1648, 1654, 1660, 1666 Dufossat street, 5108, 5112 Pitt street, and 5123 Pry-

tania street, the grounds measuring about or as per title for the sum of fifty-eight thousand and $^{00}/_{100}$ ($58,000.00) dollars, on terms of cash. All properties sold subject to leases expiring September 30th, 1923.

"The taxes 1923 to be prorated.

"All proper and necessary certificates to be paid by vendor.

"Act of sale to be passed before purchaser's choice Esq. Notary within sixty days at expense of purchaser.

"Possession to be given * * *

"If this offer is accepted I will deposit with Geo. Danziger, immediately in cash, as part of the purchase price two thousand nine hundred and $^{00}/_{100}$ ($2,900.00) dollars.

"This deposit is to be noninterest and is to be placed in any bank of your selection and is not to be considered as earnest money, the parties hereto reserving the right to demand specific performance.

"Should I fail to comply with the terms of this offer if accepted, I obligate myself to pay the commission of Geo. Danziger, amounting to one thousand seven hundred forty and $^{00}/_{100}$.

"This offer remains binding and irrevocable until June 20, 1923.

"[Signed] Leon Jacobs.

"New Orleans, La., June 20th, 1923.

"I accept the above and agree to pay the commission of Geo. Danziger, amounting to one thousand seven hundred forty and $^{00}/_{100}$ ($1,740.00).

"[Signed]  Mrs. Sarah Freyhan,
                    "By S. Odenheimer."

Plaintiff having caused a survey of the property situated on Dufossat Street to be made, it was discovered that the fence and yard forming part of the premises No. 1648 Dufossat street, on the side nearest St. Charles avenue, encroached upon the land of the adjoining proprietor 6 feet and 6 inches, and that the house itself actually extended over on said neighboring lot some 3 inches. Plaintiff thereupon declined to accept the whole property unless the defect was cleared up, and, defendants having failed to do this, the present suit was filed to recover the deposit of $2,900 made at the time of the offer together with $615 additional expenses of obtaining certificates and attorney's fees for examining the title.

Defendants denied all the allegations of the petition, except the agreement of sale. Assuming the character of plaintiffs in reconvention, they averred that they were entitled to have a specific performance of the contract; that they had agreed to sell the plaintiff the seven pieces of property described upon the terms and conditions set forth in said contract; that plaintiff had refused to accept title upon the ground that there was a defect therein as to dwelling nearest St. Charles avenue, but "that no defect exists in petitioner's title and that defendant [plaintiff] is without right to withdraw from his agreement aforesaid." They prayed that plaintiff be ordered to take title within a reasonable time, and, in default thereof, the civil sheriff be ordered to sell said property after due advertisement and that defendants recover any loss in the price occasioned thereby.

With the issues thus made up, the case was tried, and there was judgment as prayed for for plaintiff and rejecting defendants' reconventional demand. Defendants have appealed.

### Opinion.

We quote the reasons for judgment of the court below, as follows:

"The evidence shows that this was not a sale of so many superficial acres or so many superficial feet of ground, so the law applying to actions quanti minoris will not apply.

"The evidence shows that what was purchased was an estate visualized by buildings and fences. In other words, if a man has a landed estate and the boundaries of the estate are established by fences or walls and an offer is made to buy the estate, the offer is to purchase the estate as it is shown to exist by its physical fixtures, and it is the acceptance of that offer which creates the contract to sell the estate as shown by its fences and walls.

"The evidence shows there was an offer made of $58,000 for a number of houses in this city designated by municipal numbers, one of which was 1648 Dufossat street. In every contract of sale there are three things essential: The price, the thing, and the consent. The thing

designated as a whole was a number of separate tenements; the price was the whole price. There was no separation so as to make several contracts of sale embraced in one document. On the contrary, the document shows it was one thing and one price and neither can be separated, and as I understand it the law is absolute and that where an estate as such is sold, that if it is found that the vendor had no title to the estate, or to a part of the estate, the contract is voidable.

"The evidence in this case shows at this 1648 Dufossat street, that there were 6 feet 3 inches of ground on the inside of the physical fence, which did not belong to the vendor, some 6 feet of which constituted the yard or lawn and 3 inches of which constituted part of the house on the lot.

"It is plain that the title of the property was such as could not be taken by the plaintiff in this case, and he is perfectly justified in refusing to go along with the contract and then demand back the money which he advanced on the purchase price and he is also justified in demanding such damages as were occasioned him by the fault of the would be vendor in undertaking to contract to sell that which he did not own. The plaintiff is therefore clearly entitled to get his money back.

"As to the damages claimed, in these modern times the purchaser is entitled to have the services of a skilled man to pass on the title of the property he contemplated purchasing and the amount claimed by him of 1 per cent. of the purchase price, in my opinion is the smallest amount any competent attorney should charge and receive for such services. While there is required physical labor, there is required time and the advantages of learning and skill for the proper performance of the work and over and above that the attorney holds himself out as skilled in his trade and profession and if he is careless or lacks the necessary skill and gives an unsound opinion on a title and the purchaser takes it on the face of his opinion and is afterwards damaged, the attorney is responsible if the damage is caused by his fault, the same as the law says, every one who holds himself out as skilled is responsible for any damages caused by his lack of skill. All these things taken into consideration, in addition to the loss of prestige due to having given an erroneous opinion on a title, a compensation of one per cent. is small indeed. The testimony having shown the plaintiff, Mr. Jacobs, has incurred this obligation, it is a matter of indifference whether it is shown he has paid it or not and in the opinion of the court he is entitled to the $590.

"The other expense he was put to of securing certificates, under the terms of the agreement, the purchaser had the selection of the notary. That placed upon him the burden of securing the certificates in time to pass the act, even though the vendor eventually had to pay for them. This item I think has been made out.

"For these reasons there will be judgment dismissing the reconventional demand and further judgment in favor of the plaintiff as prayed for.

"H. C. Cage, Judge."

[1] Defendants take the position that the property which they obligated themselves to convey was described by reference to their title papers; that the frontage on Dufossat street called for thereby is there, and that it can make no difference that an actual survey showed the improvements to encroach upon adjoining property to the extent mentioned. However, it is not disputed that the agent of the seller took the prospective purchaser to the premises, pointed out the property as that bearing municipal numbers, including No. 1648 Dufossat street, with the fences and improvements situated as they appeared upon the ground. Neither can there be any doubt but that he thought he was buying all the property within those inclosures. In these circumstances, to require him to take the property in the condition which the survey showed it to be would be to make for him a contract by judicial mandate which he clearly never intended to enter into, and which, as evidenced by this litigation and the efforts to straighten out the title so that he might comply, he would not have made. There was, therefore, no meeting of the minds, or at least an error of fact as to a material part of the agreement which renders it ineffective as to plaintiff.

Although not pleaded in the court below, and while not argued there (counsel for plaintiff asserting as a reason for not doing so that the lower judge had promptly decided the matter from the bench without affording an opportunity to make such contention, which was more or less disputed in oral argument

here by counsel for plaintiff), in this court counsel for the defense have taken the position, that, inasmuch as both the property involved in this suit (No. 1648 Dufossat street) and that adjoining upon which the improvements encroached were formerly owned by defendants' husband and father who erected the improvements thereon as they now stand and subsequently sold the latter to other persons, he had thereby imposed upon the said adjoining estate a continuous apparent servitude—that is to say, a destination du père de famille—which gives the holder of the premises No. 1648 Dufossat street the right to continue the use and occupancy thereof as fully as if the title were vested in fee simple. In support of this position, counsel cite Woodcock v. Baldwin, 51 La. Ann. 989, 26 South. 46. However, that case was the reverse of the present one. Woodcock had bought certain property with full knowledge of the conditions as they existed, in so far as the physical location of the premises was concerned, whereas the defendant Baldwin had acquired in good faith 15 days before believing that he was getting the property including the improvements and the land which they occupied; but, by a subsequent survey, it developed that part of the improvements were upon the property bought by Woodcock. He then attempted to have the court declare him the owner of those portions which encroached upon his land and sued for a partition by licitation. In those circumstances, the court held that the original purchaser in good faith was entitled to the improvements in their entirety, and that the property of Woodcock was impressed with a servitude for their support under the theory just mentioned.

[2] In the present case, however, plaintiff made a contract to buy the property, including the fee itself, and the defendants obligated themselves to deliver the premises by municipal numbers, after they had been pointed out upon the ground with improvements and inclosures as they stood. Plaintiff never for one moment thought of buying property as to which he would have to depend upon a servitude on the land of another for its use and enjoyment, and perhaps become involved in litigation with such other person for the vindication of that right. Hence, our conclusion is that he should be relieved from any liability under the contract. R. C. C. arts. 1819, 1823; Bodcaw Lbr. Co. v. White, 121 La. 715, 46 South. 782.

[3, 4] As to the sums claimed in addition to the deposit, we agree with the lower judge that the record amply supports plaintiff's right to recover.

For the reasons assigned, the judgment appealed from is affirmed with costs.

Rehearing denied by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.