## SCHILL v. CHURCHILL ET AL.

(June 10, 1929. Opinion and Decree.)
(June 24, 1929. Rehearing Refused.)
(October 8, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Neils F. Hertz, and Woodville & Woodville, of New Orleans, attorneys for plaintiff, appellee.

McCloskey & Benedict, and W. Sommer Benedict, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Mrs. Shea had contracted to sell to Alfred M. Churchill certain improved property bearing the municipal number 3431 Milan street in this city. Be-

fore taking title to the property, Churchill contracted to sell it to Joseph Schill, plaintiff. It was thereupon agreed that, in order to avoid the cost of two transfers, Mrs. Shea should transfer direct to Joseph Schill and that Churchill should intervene in the act of sale and transfer to Schill any rights he might have acquired as a result of his contract with Mrs. Shea. After Schill purchased the property it developed that the improvements thereon encroached upon the land of a neighbor. Schill, after causing a survey to be made and thus satisfying himself that the encroachment in fact existed, caused the improvements to be moved. The expense of this moving was $315.60, and it is for the recovery of this amount that the present suit is brought. Plaintiff sues both Churchill and Mrs. Shea.

Churchill, in turn, calls Mrs. Shea in warranty, alleging that if there is any liability in him Mrs. Shea should indemnify him against loss.

The lower court rendered judgment in favor of plaintiff and against both defendants, and on the call in warranty rendered judgment in favor of Churchill and against Mrs. Shea.

Churchill apparently realizing that the encroachment did actually exist and that therefore he was liable to Schill for such loss as had been sustained as a result thereof, paid the judgment.

Mrs. Shea, however, appealed suspensively, and the matter is therefore now before us solely on the question of the liability of Mrs. Shea to indemnify Churchill for the loss sutained by him as a result of the payment by him of Schill's judgment.

Mrs. Shea resists payment on several grounds.

She contends that Churchill, having paid the judgment and having thus acquiesced therein, cannot now claim reimbursement from her. She also contends that there is not sufficient proof in the record that the boundary line was correctly determined by the survey to which we have heretofore referred, and she further argues that, even if the boundary line was correctly determined, and even if there was an encroachment, this encroachment had existed for more than ten years, and that therefore a continuous apparent servitude had been created. She contends that therefore, since the neighbor on whose land Mr. Schill's improvement encroached could not force the removal thereof, Mr. Schill's voluntary removal did not entitle him to recover the costs thereof.

It is quite apparent that the argument that Churchill, having acquiesced in the main judgment, cannot now insist on his call in warranty against Mrs. Shea, is not sound. Had Schill brought his suit only against Churchill, there would have been no legal objection to Churchill's defending the suit alone, and, in the event of his loss, to his filing a new suit against Mrs. Shea to recover such amount as he might have been called upon to pay in the first suit. Of course, under such circumstances the burden would have been on him to prove that the expenditure made by Schill was justified by reason of the fact that the encroachment actually existed.

This is not the case which exists where two joint tort-feasors are sued and one pays the judgment. Of course the one paying has not the right to call the other in warranty.

Mrs. Shea's contention that the survey which was introduced in evidence does not comply with the formalities of the Revised Civil Code, as set forth in articles 833 to 839, inclusive, overlooks the fact

that those articles provide for a means of fixing a boundary between two contiguous properties, and not the sole means of determining the correctness of a boundary where the question is in dispute not between the owners of two contiguous properties, but between one owner and his vendors.

It is quite true that the vendors were neither present nor represented when the survey was made, but this does not deprive the survey of its effect in evidence, nor does it render the testimony of the surveyors objectionable. The testimony and the survey were both admissible in evidence, and, in the absence of countervailing proof by other surveyors, or experts, are amply sufficient to justify the holding that the boundary as shown in the survey, and as testified. to by the surveyor, is the correct one.

Mrs. Shea's method of procedure, instead of being by objection to the evidence, should have been by the offering of countervailing proof of her own, if such existed.

The trial court was therefore correct in accepting as the true boundary that shown by the testimony of the surveyor. It therefore follows that the trial court was correct in determining that the encroachment actually existed.

This brings us to the last contention of Mrs. Shea, which is to the effect, that, even though the encroachment did exist, there was no necessity to move the building, because the owner of the contiguous property could not have forced its removal, since its existence for more than ten years created a continuous apparent servitude.

Counsel calls to our attention the case of Greco vs. Frigerio, 3 La. App. 649,

which involved the attempt of an owner of a contiguous estate to force the removal from his property of encroaching improvements of his neighbor. This court held, of course, that since these improvements had existed for more than ten years, there was created in their favor a continuous apparent servitude, and that therefore their removal could not be forced.

That is not the question here. It is quite probable that the owner of the contiguous estate would not have been successful in an attempt to enforce the removal of Mr. Schill's improvements, but there would always have been the possibility of a lawsuit to enforce their removal, and there would always have been the possibility of the loss of the servitude by the destruction of the improvements. What Mr. Schill bought was the full and complete title to the improvements and the land on which they were situated. If Mrs. Shea is correct, what he got were the improvements, some of the land on which they were situated, and the possibility or probability of a lawsuit to maintain his rights to a servitude. The situation is exactly the same as that which gave rise to the case of Jacobs vs. Freyhan et al., 156 La. 585, 100 So. 726, except that in that case the prospective purchaser discovered the encroachment prior to transfer of title. In discussing the question of whether or not the purchaser could be forced to take title, the Supreme Court said:

"In the present case, however, plaintiff made a contract to buy the property, including the fee itself, and the defendants obligated themselves to deliver the premises by municipal numbers, after they had been pointed out upon the ground with improvements and inclosures as they stood. Plaintiff never for one moment thought of buying property as to which he would have to depend upon a servitude

on the land of another for its use and enjoyment, and perhaps become involved in litigation with such other person for the vindication of that right."

To the same effect we find the decision of the Supreme Court in Louisiana State Rice Milling Co., Inc., vs. Kaplan, 168 La. —, 121 So. 188, in which the court said:

"Under the contract, as we read it, what the defendant agreed to purchase and the plaintiff agreed to sell and deliver was a certain rice mill with all its appurtenances, except such appurtenances as are expressly excluded, and the land on which it is located. The record discloses that plaintiff is unable to deliver the property it has undertaken to deliver, because a portion of the land on which the mill is located is not owned by plaintiff. Thus, the case falls within the ruling of this court in Jacobs vs. Freyhan, 156 La. 585, 100 So. 726, viz.

"That a prospective purchaser cannot be forced to comply with his contract, where a portion of the property to be sold encroaches on adjoining property, there being error of fact rendering it ineffective as to him."

Counsel argues that there was neither eviction nor threat of eviction, and therefore Mr. Schill was not justified in voluntarily moving his improvements from the contiguous property, and in support thereof he cites: Article 2506, R. C. C.; Pharr vs. Gall, 108 La. 307, 32 So. 418; Lanphier vs. Adler, 118 La. 511, 43 So. 146; Caddo Levee Dist. vs. Glassel, 120 La. 401, 45 So. 370.

We do not think the case cited applicable. Here it was manifest that the encroachment did exist, and it was certain that, if they were not removed, the owner, Mr. Schill, would live constantly in fear of a lawsuit. He was justified in causing their removal, and the expense thereof should be borne by those responsible therefor. Since Churchill was in no

way responsible therefor, having never taken actual title to nor possession of the property, the loss should fall where it rightfully belongs—upon Mrs. Shea.

It is therefore ordered, adjudged and decreed that the judgment on the call in warranty in favor of plaintiff in warranty, Alfred M. Churchill, and against defendant on the call in warranty, Mrs. Olive Humble, widow of Martin P. Shea, in the full sum of $315.60, with legal interest thereon from judicial demand until paid, be and it is affirmed, at the cost of appellant.