ST. PAUL, J.
 

 The district judge has 'correctly disposed of this case and assigned his reasons in an elaborate opinion which we adopt as our own, except in so far as hereinafter modified, to wit:
 

 Opinion of the District Judge:
 

 “On January 31, 1929, an ordinary partnership engaged in the business of real estate agents, now euphonically called ‘Realtors,’ had in their possession a mandate from Enrico Ascani, authorizing these real estate agents to sell a piece of property belonging to him. These agents, or one of them, interested Mr. and Mrs. J. T. Hunley in the property. They were carried up and shown the piece of property, which was a double cottage on Seventh street between Carondelet and Baronne streets, bearing the municipal Nos. 172S-1730 Seventh street. The premises were shown to the prospective purchasers and were by them examined. The property appeared attractive, and the two plaintiffs in this case became desirous of purchasing it and becoming the owners thereof. The plaintiffs made an offer to the agents on January 31, 1929, about ten days after this inspection, to purchase this property for the sum of $7,400, the description in their offer reading: ‘The double cottage Nos. 1728-1730 Seventh street between Carondelet and Baronne, the ground measuring approximately 30'xl20', or as per title.’ The offer made by these two plaintiffs then went on to say that the terms by which this property was to be purchased were to be $1,400 cash and the balance of $6,-000 through any New Orleans homestead, ‘said loan may be obtained by purchasers or Wise-Miller, Agents,’ and then followed the words ‘community drive privilege’ inserted in the title. The plaintiffs, or one of them, the wife, together with Wise-Miller, applied to the Liberty Homestead Association of this city and obtained grant of a loan on the property in question of $6,100. Subsequently, the plaintiffs wrote to Wise-Miller through their attorney, Mr, L. R. Wertheimer, denouncing the contract and stating that the title offered was not merchantable, and that they would not comply therewith, and demanded the return of the $740 which had been deposited with them, and on failure of
 
 *715
 
 Wise-Miller to return the $740 brought this suit against Wise-Miller and against Ascani asking a judgment ordering the return of the deposit and further judgment annulling the contract of purchase and sale on two grounds: First, that the contract contained a potestative condition and was therefore null and void ab initio; and, second, that the property in question, instead of 30' front on Seventh street, contained only 26'4". We will take up their first objection first, that the contract contained a potestative condition. This is urged upon the court under the jurisprudence established by the Court of Appeals and subsequently affirmed by the Supreme Court, that, where the validity of a contract was made to depend upon the obtaining of a loan from a homestead where the question whether the loan would be applied for or not was entirely within the will and pleasure of the proposed purchaser, and therefore the carrying out of the contract rested entirely upon his will and pleasure, it was one containing a potestative condition and therefore null and void ab initio. In my opinion,, this jurisprudence will not apply to this case, for the reason that after the words ‘balance of $6,000 through any New Orleans homestead’ there followed the words, ‘said loan may be obtained by purchasers or Wise-Miller, Agents’; therefore, it did not depend upon the will of the purchasers alone as to whether application could be made to any homestead and the loan obtained. Wise-Miller, the agents of Ascani had it in their power to apply for and obtain the loan, and the purchasers had no power to prevent them from so doing, and when they did exercise the power granted to them the contract, so far as that portion was concerned, became a condition fulfilled, which made an absolutely good contract.
 

 “Now, as to the second objection, that the property, instead of being 30' front on Seventh street only had 26'4". The words' describing the property, after declaring it to be the double cottage Nos. 1728-1730 Seventh street between Carondclet and Baronne, proceeded with these words ‘the grounds measuring, approximately, 30' by 120' or, as per title.’ The question then arises: What was offered for sale, what was seen, what was contracted for? The evidence convinces me that what was offered was this double cottage situated on Seventh street, and that the grounds, as shown by visual observation to the two prospective purchasers was the property they saw. They saw the lines, they saw the community driveway, they saw the rear of the property, they saw everything connected with it; and then they agreed to purchase that property with the dimensions, first 30'xl20’, if such it was, or more or less, if the title held by the owner was more or less.
 

 “In my opinion, the canon of construction which requires the court in construing either the law of the state, an ordinance of a city, or a contract between two people, which is a private law, to give effect to each and every word therein contained, if it is possible so to do, and never to strike out and refuse to consider words contained unless no reasonable construction could be given thereto, must apply in this case and forbids this court to read out of this contract the words ‘or as per title’ ; and, when the court finds itself unable to read these words out of the contract, to consider them not written, it is considered by the court to be a reasonable construction and
 
 *717
 
 interpretation of these words that the parties to the contract haying seen the property themselves, the estate, as it is sometimes called, desired to be the owners of it and were willing to take it as viewed, according to the title, which would embrace the physical things that they saw. The house and the grounds, in the front and rear, and that, if the title of the owner called for a little more-or a little less, the object which they desired to purchase would be acquired, and that is that estate consisting of this double cottage with its community driveway and the physical improvements put upon it which had become part of the immovables by destination.
 

 ‘'Counsel for plaintiffs in this suit refers me to a case that went up from this court to the Supreme Court, Jacobs v. Freyhan, 156 La. 589, 100 So. 726. Instead of that case being one beneficial to the plaintiffs’ case, it is, in my opinion, one damning thereof. In that case the prospective purchaser, Jacobs, was shown a certain house in this city, and he contracted to buy with an instrument similar
 
 to
 
 the one now before me, in which the words were used giving supposed measurements in feet and inches, followed by the words ‘or as per title.’ When Jacobs had the property surveyed, he found that the house he proposed to buy and which it was proposed to sell to him was some 6 inches over on the adjoining property’s line. He refused to take it and I upheld him in it in a written opinion, which I find the Supreme Court copied in its opinion in full. After copying my opinion, the Supreme Court then said: ‘Defendants take the position that the property which they obligated themselves to convey was described by reference to their title papers; that the frontage on Dufossat street called for by them is there and that it could make no difference that an actual survey showed the improvements to encroach upon adjoining property to the extent mentioned. However, it is not disputed that the agent of the seller took the prospective purchaser to the premises, pointed out the property as that bearing Municipal numbers, including No. 1648 Dufossat street with the fence and improvements situated as they appear upon the ground. Neither can there be any doubt but that he thought he was buying all the property within these enclosures. Under these circumstances,
 
 to
 
 require him to take the property in the condition which survey showed it
 
 to
 
 be would be to make for him a contract by judicial mandate which he .clearly never intended to enter into, and which, as evidenced by this litigation and the efforts to straighten out the title so that he might comply, he would not have made. There' was, therefore, no meeting of the minds, or at least an error of fact as to a material part of the agreement which renders it ineffective as to the plaintiff.’
 

 “Now, in this case the property was seen, the house and all the improvements are on the 26'4", the community passage way is there, as shown,, and is mentioned in the contract; and everything these plaintiffs saw, wanted, and understood they were contracting for, is there and is ready to be turned over to them on their complying with their obligations. This case is radically different from the case of Jacobs v. Freyhan, 156 La. 585, 100 So. 726. There Jacobs saw a house he wanted to buy, contracted to buy, and found the house was situated partly on the ground belonging to other people. In this
 
 *719
 
 case the plaintiffs saw the house, saw the premises, saw the estate, and, although the property has neither 30 feet on Seventh street nor has it a depth of 120 feet, yet the proposed vendor, Ascani, has a good title to everything that the plaintiffs saw and wanted to purchase, and it seems to me that is the correct interpretation and construction to be given those words, ‘or as per title,’ that the would be purchasers saw everything that they desired to purchase and to which Ascani had a good title.
 

 “The contract has a stipulation in favor of Wise-Miller in these words: ‘Should I fail to comply with the terms or conditions of this contract after same is accepted I obligate myself to pay your commission on this sale and any attorneys fees and costs of court that you may incur in enforcing collection of your claim.’ On that, Wise-Miller, defendants in this case, ask for a judgment of 4 per cent, on the purchase price of $7,400 and a reasonable attorney’s fee, which they fix at $50 in accordance with the stipulation which I have just read. This is a conditional obligation; they bind and obligate themselves to pay 4 per cent, of $7,400 in the event that they should fail to comply with the terms and conditions of this offer after same is accepted. Now, I see, from the document before me, that Ascani is bound and obligated to pay to Wise-Miller 4 per cent, for effectuating this sale; and the defendant Ascani prays in reeonvention for a specific performance, which the court intends to order. If the judgment of the court is complied with, everything that Wise-Miller intended to get out of it, the 4 per cent, commission, will be gotten; and, until the failure to comply is final and irrevocable, the condition is not fulfilled, and plaintiffs do not owe Wise-Miller 4 per cent, nor any attorney fee for collecting same, for enforcing the collection of same. From what I have said, it is plain that the reconventional demand for specific performance on the part of Ascani is well taken and he should have judgment therefor, but not for any attorney fees claimed for him, as he has been totally unable to show me any contract to pay attorney fees or any statute granting it. There will, therefore, be judgment entered dismissing plaintiff's’ demand at their costs; there will be further judgment dismissing the reconventional demand of Wise-Miller; there will be further judgment dismissing reconventional demand of Ascani for attorney fees; and there will be further judgment ordering specific performance of the obligation of the plaintiffs, Mr. and Mrs. Hunley, in accordance with the contract, and it is so ordered in this case.”
 

 Our able and learned brother of the trial court is in error in supposing that this court has ever adopted as a sound proposition of law that, where a contract for the purchase of real estate is made to depend upon the condition that the purchaser shall be able to secure for the purpose a loan from a homestead association, said contract contains a potestative condition on the part of such purchaser and is therefore not enforceable against him. This court has not as yet so held; and, in view of the fact that, as pointed out by the district judge, such a proposition, even if correct, has no application in this case, we are not called upon to consider here its correctness vel non.
 

 In all other respects we see nothing to improve upon in said opinion.
 

 
 *721
 
 Decree.
 

 Eoi the reasons assigned the judgment appealed from is affirmed.