209 So.2d 25

**Norman Lind YOUNG**

v.

**Mrs. Helen W. STEVENS et al.**

No. 48459.

June 5, 1967.

On Rehearing Nov. 6, 1967.

Rehearing Denied April 29, 1968.

On Second Rehearing March 25, 1968.

Fernand F. Willoz, III, New Orleans, for defendant-appellee, applicant.

Harry T. Howard, III, Charles E. Richards, Jr., Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, for plaintiff-appellant-respondent.

SUMMERS, Justice.

Presented for determination as the principal question in this suit is whether the title to certain real estate is merchantable.

On March 9, 1965, by written agreement designated "Agreement to Purchase or Sell", Mrs. Helen W. Stevens offered and agreed to sell for $24,750 the premises referred to as: "1228 Arabella Street, Single, Two Story On grounds measuring about 40' x 120' or as per title." The sale was to be on terms of credit and was conditioned on the ability of the purchaser to obtain a satisfactory loan, as detailed in the agreement. Latter & Blum, Inc., was designated in the agreement as the real estate agent for the transaction.

Norman L. Young agreed to purchase the property and signed the acceptance on March 10, 1965. As required by the agreement, he deposited $2,475 with the seller's agent, which was 10 percent of the purchase price.

The agreement further provided that:

"The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving

unto agent the right to recover commission.

"Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all reasonable attorney's fees and costs incurred by the other party, and/or agent in enforcing their respective rights."

The prospective lending agency in this transaction, The Carruth Mortgage Corporation, caused a survey of the premises to be made for the account of the purchaser Young on May 4, 1965. The lot was surveyed as Lot "X" fronting on Arabella Street in Square 44, Hurstville, Sixth District of the city of New Orleans, said square being bounded by Nashville Ave., Prytania St., Arabella St. and Perrier St. The survey revealed the following encroachments:

1. A concrete drive strip belonging to Mrs. James Van Buren Gresham, the adjoining property owner, encroaching onto the lot in question from the property on the Prytania Street side to the extent of one foot at the intersection of the Prytania Street side property line at Arabella Street and tapering back in diminishing width to a point on the Prytania Street side property line about 25 feet distant from the front of the lot on Arabella Street.

2. A fence belonging to the adjoining property owner, Mrs. James Van Buren Gresham, encroaching onto the property on the Prytania Street side commencing about half way back from the front of the lot, to the extent of 1 foot 3 inches, and tapering down to the property line about two-thirds of the distance from Arabella Street to the rear of the lot.

3. A fence encroachment at the rear of the lot onto the adjoining lot in the rear to the extent of 10 inches 6 lines near the Prytania Street side of the lot and tapering down to 3 inches to 5 lines towards the Perrier Street side.

4. A fence encroachment onto the adjoining property on part of the Perrier Street side to the extent of 6 inches 0 lines.

Being of the opinion that the driveway and other encroachments made title to the property unmerchantable, the purchaser Young notified the seller Mrs. Stevens that he considered the contract void. But Mrs. Stevens was unwilling to declare the purchase agreement null and void or to return his deposit; nor was she able to clear the encroachments revealed by the survey. Young then instituted suit against Mrs. Stevens and the agent Latter & Blum for the return of his deposit with interest, attorneys' fees and costs. Mrs. Stevens answered admitting the encroachments, but she denied that they rendered her title unmerchantable. She asked for the forfeiture of Young's deposit of $2,475, for attorneys' fees and for costs of the proceedings.

Mrs. James Van Buren Gresham, the adjoining property owner, steadfastly refused to remove the encroaching driveway or fence on the Prytania Street side of the lot in question. Mrs. Stevens therefore asserted a third-party demand against her for indemnification in the event it should be held that the encroachments rendered the property unmerchantable.

Latter & Blum answered and set forth its position as a stakeholder of the deposit. It also prayed for judgment against Young for its commission of $1,485, together with attorneys' fees in the amount of $500 with interest and costs.

A motion for summary judgment was tried upon a joint stipulation of facts. Whereupon the trial court dismissed plaintiff's suit and declared Mrs. Stevens to be entitled to the deposit, less the amount due the real estate agent. This result made an adjudication of the third party demand unnecessary.

The Court of Appeal reversed the judgment and declared that plaintiff was entitled to the refund of his deposit and to attorneys' fees and costs; it held that Latter & Blum would have to proceed against the seller and defendant Mrs. Stevens for its commission; and it remanded the cause for further proceedings to permit the prosecution of defendant's third party demand against Mrs. Gresham. (190 So.2d 264.)

Certiorari was granted on the application of Mrs. Stevens.

Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions involved. Roberts v. Medlock, 148 So. 474 (La.App.1933). "(O)ne should not be made to accept a title tendered as good, valid and binding unless it is entirely legal from every point of view." Bodcaw Lumber v. White, 121 La. 715, 721, 46 So. 782, 784 (1908). The promisee in a contract to sell is not called upon to accept a title which may reasonably suggest litigation. Marsh v. Lorimer, 164 La. 175, 113 So. 808 (1927). And while the amount involved may be small, "it cannot be said that because of this fact the danger of litigation is not serious. No one can be forced to buy a lawsuit * * *" Rodriguez v. Shroder, 77 So.2d 216, 224 (La.App.1955). See Patton on Titles § 46 et seq. (2d ed. 1957); 92 C.J.S. Vendor and Purchaser §§ 209, 211 (1955); 55 Am.Jur. Vendor and Purchaser §§ 252, 253, 254 (1946).

The encroachments upon the property in this case undoubtedly suggest litigation; for the purchaser could not take peaceful possession of the entire property if part of it is occupied by Mrs. Gresham, who, the record shows, refuses to surrender the controverted strips. No circumstance more clearly suggests litigation than this fact. Truly, Young would be buying a lawsuit, or he would have to take less footage than the agreement calls for, either condition being

a violation of the requirement that he be furnished a merchantable title. In like manner, a person buying property whose improvements encroach upon his neighbor is likely to sustain a law suit to defend his right to possession of the property sold to him beyond his title. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); DeSalvo v. Doll, 209 La. 1063, 26 So.2d 140 (1946); Jacobs v. Freyhan, 156 La. 585, 100 So. 726 (1924); Schroeder v. Krushevski, 186 So.2d 640 (La. App.1966); Clesi, Inc. v. Quaglino, 137 So. 2d 500 (La.App.1962); Papalia v. Hartson, 52 So.2d 775 (La.App.1951).

■ The same result obtains, therefore, whether the adjoining property owner's improvements encroach upon the property to be sold or whether the property to be sold encroaches onto the adjoining property. What makes the title unmerchantable in either instance (and both occur here) is not necessarily the extent of the encroachment, but the fact that it suggests litigation. The law will not require Young to assume Mrs. Stevens' controversy with her neighbor.

Indeed, the prospect of litigation is the very circumstance which would destroy the principal cause of a contract to purchase a home. A person buying a home wants, above all, peaceful occupancy among peaceful neighbors. Selling him property which will probably bring on a lawsuit is contrary to that motive and furnishes a basis for nullifying the contract. La. Civil Code art. 1823 (1870).

■■ It will not do in such a case to contend, as Mrs. Stevens does here, that the encroachments are de minimis. To begin with the encroachments consume about 1/40th of the lot area. This is significant. But what is more noteworthy is the fact that, until this time, no one has been able to remove the objectionable encroachments without a lawsuit, not even the vendor Mrs. Stevens who advances the contention that they are insignificant.

We are able to distinguish the authorities relied upon by Mrs. Stevens. Insofar as we deem it appropriate to discuss those distinctions, we make these observations: Hunley v. Ascani, 174 La. 712, 141 So. 385 (1932) deals with discrepancies in the quantity of ground between the dimensions given in a contract to purchase and sell and in the dimensions in the title sought to be conveyed pursuant thereto. The case does not involve an encroachment which suggests litigation. Scurria v. Russo, 134 So.2d 679 (La.App.1961) likewise has to do with a shortage in the area of the property contracted to be sold, not with an encroachment suggesting litigation. O'Reilly v. Poché, 162 So.2d 787 (La.App.1964), and Werk v. Leland University, 155 La. 971, 99 So. 716 (1924) simply recognize the established proposition that where there is a conflict between the calls in a deed and a survey referred to in the deed the survey governs.

We conclude that the title in question is not merchantable.

The pertinent part of the "Agreement to Purchase or Sell", quoted in the beginning of this opinion, entitles the purchaser to a return of his deposit when the seller is unable to convey a merchantable title.

The allowance of $500 attorneys' fees to Mr. Young is amply supported by the record before us and the work performed under the eye of the Court.

For the reasons assigned the judgment of the Court of Appeal is affirmed and is recast as follows:

It is hereby ordered that Latter & Blum, Inc., return to Norman Lind Young the sum of $2,475 deposited in connection with the contract in question.

It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff Norman Lind Young and against Mrs. Helen W. Stevens in the sum of $500 as attorneys' fees, with legal interest from date of judicial demand until paid, together with legal interest on the deposit of $2,475 from date of judicial demand until paid, and for all costs of these proceedings.

It is further ordered, adjudged and decreed that this case be remanded to the trial court for further proceedings in connection with Mrs. Stevens' third party petition against Mrs. Gresham, and for a determina-

tion of such additional issues as the nature of the case may require.

HAMITER, J., dissents with written reasons.

HAMITER, Justice (dissenting).

The majority opinion herein, as I appreciate it, completely fails to give effect to or disclose a stipulation entered into between the litigants which is that, prior to entering into the Agreement to Purchase, the plaintiff Norman Young visually inspected the premises that is the subject of the sale. That is particularly important since Mrs. Helen W. Stevens, the vendor, is able to and has offered to convey to such plaintiff title to the property which he actually saw, examined and intended to buy, it being described in the Agreement to Purchase as "1228 Arabella Street, single, two-story on grounds measuring *about* 40' x 120' *or as per title.*"

Just as was the situation in Hunley et ux. v. Ascani et al., 174 La. 712, 141 So. 385, Mrs. Stevens "has a good title to everything that the plaintiffs saw and wanted to purchase." And that case, in my opinion, is controlling here and favors the position of Mrs. Stevens. See also Kindred v. Hardie-Meric, Inc., La.App., 159 So.2d. 370. The attempt of the majority to distinguish the Hunley decision on the assertion that it merely deals with discrepancies as between

the Agreement to Purchase and the title sought to be conveyed is unjustified.

The only possible effect of the asserted encroachments in the instant dispute (if they are permitted to remain) is a shortage (and a very minute one) in the area of the property contracted to be sold. Certainly, this plaintiff would not be compelled to litigate with Mrs. Gresham in order for him to obtain the premises that he visually inspected and intended to buy.

The theory of the cases cited and relied on for reaching the majority conclusion indirectly supports my position herein. In each of those cases the purchaser saw and inspected the premises offered for sale. It later appeared, however, that part of the improvements examined by him prior to entering into the Agreement to Purchase was located on adjoining land belonging to another and could not be conveyed by the vendor. The court held that, despite the fact that the vendor could transfer title according to the measurements and description in the Agreement to Purchase, the vendee was entitled to obtain the property *and improvements* which he intended to buy— that which was shown to and inspected by him prior to his entering into the contract.

I think that the district judge in this case correctly concluded that " * * * the encroachment * * * was of a very insignificant nature. Certainly, the pur- 'chaser would not have to engage in any litigation whatsoever in order to have a proper merchantable title to the property which he intended to buy and which he examined and actually saw prior to the execution of the agreement to purchase and which he purchased as per title (the title containing the encroachments as indicated in the previous acts of sale). * * * " Consequently, it is my opinion that the judgment of the district court, which dismissed plaintiff's suit and declared Mrs. Stevens entitled to the deposit, should be reinstated and made the judgment of this court.

Accordingly, I respectfully dissent from the majority holding.

## ON REHEARING

HAMITER, Justice.

A rehearing was granted herein to permit us to reconsider our original conclusion that plaintiff, Norman Lind Young, was entitled to recover a deposit of $2475 made by him in connection with his agreement to purchase from Mrs. Helen W. Stevens, one of the defendants, a certain lot and improvements located in the City of New Orleans.

The other named defendant is Latter and Blum, Inc., a real estate firm which, in the pleadings, set forth its position as holder of the deposit.

Our judgment on the original hearing was, in effect, an affirmance of the Court of Appeal decree which had reversed the

district court's judgment dismissing plaintiff's suit and awarding to the two defendants the amount of the deposit.

On March 9, 1965, in a written agreement entitled "Agreement to Purchase or Sell", Mrs. Stevens offered to convey and Young agreed to buy the premises described as "1228 Arabella Street, Single Two Story on grounds measuring about 40′ x ′20′ or as per title." (Additional details of the agreement are set forth in our original opinion and need not be repeated here.) In connection therewith Young deposited $2475 with Latter and Blum, Inc., the seller's agent, representing 10% of the proposed purchase price. (Underscoring ours)

Later, Young refused to take title in accordance with the agreement, claiming that there existed encroachments on the property.

Thereafter, he instituted the instant suit to recover the deposit. He alleged in his petition that he was ready, willing and able to purchase the premises in accordance with the agreement, but that Mrs. Stevens "was unable to deliver merchantable title to said property, in that a survey had shown that there were both fence and driveway encroachments by the adjoining property upon the subject property, which said encroachments rendered the title unmerchantable." (So that there is no misunderstanding, we note here that in our original opinion we pointed out that the plat in connection with

the survey made on behalf of plaintiff in 1965 indicated that some of Mrs. Stevens' fences to the rear of the lot appeared *to encroach slightly on adjoining property*. We express no opinion as to the effect of such encroachments, if they in fact existed. They were not pleaded by plaintiff in his suit to recover the deposit and no evidence concerning them was taken. The fact that such plat was admitted into evidence does not constitute an enlargement of the pleadings, this for the reason that it was admissible for the purpose of showing the encroachments specifically and solely alleged.)

The record reveals that the lot in question is designated on the 1965 plat as Lot X fronting on Arabella Street in Square 44, Hurstville, Sixth District of the City of New Orleans, said Square being bounded by Nashville Avenue, Prytania, Arabella and Perrier Streets; and according to Young's brief the alleged encroachments thereon by the adjoining property consisted of: "1. A concrete drive strip encroaching onto the lot in question from the property on the Prytania Street side to the extent of one foot at the intersection of the Prytania Street side property line at Arabella Street and tapering back in diminishing width to a point on the Prytania Street side property line about 25 feet distant from the front of the lot on Arabella Street.

"2. A fence encroachment onto the property on the Prytania Street side commencing about half way back from the front of

the lot, to the extent of 1 foot 3 inches, and tapering down to the property line about two-thirds of the distance from Arabella Street to the rear of the lot."

Moreover, it was stipulated at the trial that prior to executing the agreement to purchase the proposed vendee made a visual inspection of the premises, at which time the fence and driveway (the only alleged encroachments) were located and plainly visible in the positions above described.

Plaintiff contends that, even though the agreement recites that the lot is *"about 40'* x 120'," because of the contract's recital of "as per title" the description and calls of the title of Mrs. Stevens' control, and she must be able to deliver all of the land described in such title. In this connection he says that inasmuch as her title shows the property to extend 40 feet on Arabella Street commencing 80 feet from Prytania Street it is unmerchantable since she cannot deliver 40 feet because of the encroachments on the Prytania Street side. (Italics ours)

But our further consideration of this case leads us to conclude, contrary to our original holding, that plaintiff's position is untenable.

Plaintiff relies primarily on Jacobs v. Freyhan et al., 156 La. 585, 100 So. 726. (His counsel cite also several other decisions of this court and of the Courts of Appeal involving circumstances similar to those in such cause.)

In the Jacobs case, following an inspection of the premises, the proposed vendee agreed to purchase the property and improvements described by a certain municipal number or "as per title". Thereafter, it appeared that *part of the land and improvements* shown to the purchaser, as being contemplated in the sale, *encroached on the property of his adjoining neighbor* and, consequently, the vendor could not convey title to all of the land and improvements seen by the purchaser as included in the agreement.

That situation is not the same as here where there were visible encroachments *on the vendor's ideal title by an adjoining neighbor.* The seller in this cause *can convey* good title to all that was exhibited to the buyer and as being included in the sale.

Incidentally, we note that, rather than being in support of the position of this plaintiff, the theory of the Jacobs case is in favor of the opposite view. In holding that the purchaser need not take title we said: "Defendants take the position that the property which they obligated themselves to convey was described by reference to their title papers; that the frontage on Dufossat street called for thereby is there, and that it can make no difference that an actual survey showed the improvements to encroach upon adjoining property to the extent mentioned. *However, it is not disputed that the agent of the seller took the prospective purchaser to the premises, pointed out the property as that bearing municipal numbers, in-*

*cluding No. 1648 Dufossat street, with the fences and improvements situated as they appeared upon the ground. Neither can there be any doubt but that he thought he was buying all the property within those inclosures.* In these circumstances, to require him to take the property in the condition which the survey showed it to be would be to make for him a contract by judicial mandate which he clearly never intended to enter into, and which, as evidenced by this litigation and the efforts to straighten out the title so that he might comply, he would not have made. There was, therefore, no meeting of the minds, or at least an error of fact as to a material part of the agreement which renders it ineffective as to plaintiff." In other words, the agreement to purchase in that case contemplated *what was shown as the subject of the sale,* rather than the description called for in the title. (Italics ours)

The circumstances existing in Hunley et ux. v. Ascani et al., 174 La. 712, 141 So. 385, on the other hand, are almost identical with those shown to be present in the instant matter and such decision, we think, is controlling here. In the Hunley case, the purchasers, *after inspecting the premises,* agreed to buy the lot and improvements, designated by a municipal number, "the ground measuring *approximately 30' x 120', or as per title."* Subsequently, they refused to comply with the agreement and sued to recover their deposit, alleging that the front of the property

contained only 26' 4" instead of the 30' called for in the agreement. In denying recovery this court approved the reasons of the trial judge as follows: " 'Now, as to the second objection, that the property, instead of being 30' front on Seventh street only had 26' 4". The words describing the property, after declaring it to be the double cottage Nos. 1728–1730 Seventh street between Carondelet and Baronne, proceeded with these words "the grounds measuring, approximately, 30' by 120' or, as per title." The question then arises: What was offered for sale, what was seen, what was contracted for? The evidence convinces me that what was offered was this double cottage situated on Seventh street, and that the grounds, as shown by visual observation to the two prospective purchasers was the property they saw. They saw the lines, they saw the community driveway, they saw the rear of the property, they saw everything connected with it; and then they agreed to purchase that property with the dimensions, first 30' x 120', if such it was, or more or less, if the title held by the owner was more or less.' "

With reference to the meaning of "as per title" the court said:

" 'In my opinion, the canon of construction * * * forbids this court to read out of this contract the words "or as per title"; and, when the court finds itself unable to read these words out of the contract, to consider them not written, it is considered by

the court to be a reasonable construction and interpretation of these words that the parties to the contract having seen the property themselves, the estate, as it is sometimes called, desired to be the owners of it and were willing to take it as viewed, according to the title, which would embrace the physical things that they saw. * * * ' ' "

Likewise, in the instant suit the buyer agreed to purchase the property as viewed and in accordance with a title which would wholly embrace the physical things that he saw and intended to purchase. There can be no doubt but that the vendor can deliver title and peaceful possession to everything shown, and which was intended to be included, in connection with the sale.

The plaintiffs in the Hunley case, incidentally, also relied on Jacobs v. Freyhan, supra. The court in discussing that decision and its applicability observed, as we have heretofore noted, that " 'Instead of that case being one beneficial to the plaintiffs' case, it is, in my opinion, one damning thereof.' " And it concluded: " 'Now, in this case the property was seen, the house and all the improvements are on the 26'4", the community passage way is there, as shown, and is mentioned in the contract; and everything these plaintiffs saw, wanted, and understood they were contracting for, is there and is ready to be turned over to them on their complying with their obligations. This case is radically different from the case of Jacobs v. Freyhan, 156 La.

585, 100 So. 726. There Jacobs saw a house he wanted to buy, contracted to buy, and found the house was situated partly on the ground belonging to other people. In this case the plaintiffs saw the house, saw the premises, saw the estate, and, although the property has neither 30 feet on Seventh street nor has it a depth of 120 feet, yet the proposed vendor, Ascani, has a good title to everything that the plaintiffs saw and wanted to purchase, and it seems to me that is the correct interpretation and construction to be given those words, "or as per title," that the would be purchasers saw everything that they desired to purchase and to which Ascani had a good title.' "

(Hunley v. Ascani, supra, was cited with approval and followed in the later Court of Appeal case of Kindred v. Hardie-Meric, Inc., 159 So.2d 370.)

Plaintiff's counsel make an attempt to distinguish the Hunley case from the present one by showing that the opinion therein mentioned that the agreement to purchase referred to a " 'community driveway privilege' inserted in the title"; but the attempt is without substance. Even a cursory reading of the opinion reveals that such reference in the agreement formed no basis for the court's result. The driveway privilege was mentioned only to show that the seller could deliver title to everything that the buyer saw and intended to purchase, including the community driveway privilege and other improvements.

Nor do we view as sound the distinction sought to be made in the original opinion herein that the Hunley case dealt with a discrepancy in the quantity of ground, while the instant one deals with encroachments. The only possible effect of the presence of the encroachments in the present dispute (although not a certain one in view of the use of the word "about" in the contract relative to the measurements) is that they provide a slight shortage in the quantity of ground to be conveyed. The shortage does not, per se, render the title (which the seller offers) unmerchantable or subject to litigation. Rather, as the district judge correctly concluded, " * * * the encroachment * * * was of a very insignificant nature. Certainly, the purchaser would not have to engage in any litigation whatsoever in order to have a proper merchantable title to the property which he intended to buy and which he examined and actually saw prior to the execution of the agreement to purchase and which he purchased *as per title* (the title containing the encroachments as indicated in the previous acts of sale.)" (Italics ours)

Furthermore, our review of the record before us reveals, as observed by the district judge, that Mrs. Stevens' title shows the discrepancies involved here. In the transcript is a recorded deed executed in 1946 between two of her ancestors in title. It refers to an annexed survey which shows the encroachments on the ideal dimensions.

Also, a joint stipulation of fact, entered into between the parties for the purpose of the trial, recites: "A copy of the survey to which reference is made in the most recent acquisition by defendant, Mrs. Helen W. Stevens, of the subject property, being an Act passed before L. H. Rosenson, Notary Public, dated July 13, 1962, and recorded in the Conveyance Office of the Parish of Orleans, State of Louisiana, in Book 647, Folio 693 is annexed to an earlier Act of Acquisition by defendant, passed before Ralph N. Fishman, Notary Public, on April 1, 1957, and *shows that encroachments presently upon this property were also in existence at that time."* (Italics ours)

True, in the description of the property in the body of the vendor's most recent deed that was executed in 1962 (above mentioned and which was apparently part of a "sale and resale" between her and a homestead company) it was stated that a 1915 survey shows that the lot commences at a distance of 80 feet from the corner of Prytania and Arabella Streets. But the description further recites that according to a plat dated October 19, 1956, annexed to an act before Ralph N. Fishman, Notary Public, dated April 1, 1957, *the lot commences an actual distance of 81 feet 3 inches* from that corner as shown on said survey. (The discrepancies are also noted in the body of the 1946 deed referred to above.)

Defendant, therefore, is able to deliver the property actually examined by plaintiff

and as per her title, the latter showing the lot to have ideal dimensions of 40′ x 120′ *with the indicated encroachments.*

The trial court dismissed the suit and granted to Mrs. Stevens a judgment against plaintiff for the full amount of the deposit. It further decreed that Latter and Blum, Inc. should turn over to Mrs. Stevens such deposit less that portion thereof due for its commission. Mrs. Stevens, in this court, asserts that she should be awarded a judgment against plaintiff not only for the deposit but also attorney's fees and the amount of the agent's commission.

We have examined Mrs. Stevens' answer to plaintiff's appeal to the Court of Appeal. Therein she sought an amendment to the judgment only insofar as it denied her attorney's fees. Inasmuch as she failed to ask for an amendment with regard to her demand for recovery of the real estate commission the judgment in that respect is not before us, is final, and it cannot now be changed.

We do, however, believe that Mrs. Stevens is entitled to recover attorney's fees under specific provisions of the agreement. In fact, it appears to have been conceded that the party in default should be awarded reasonable attorney's fees. On that basis the Court of Appeal rendered judgment in favor of Young in the amount of $500 as the value of such services when it concluded (erroneously, we think) that Mrs. Stevens

was in default, although no direct evidence as to their value was introduced. It appears to us that the services rendered by Mrs. Stevens' attorney are of the same value as those rendered by Young's attorney. We accept the Court of Appeal's finding as to such value, and we shall award attorney's fees in the amount of $500 to Mrs. Stevens.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside. The judgment of the district court in favor of Mrs. Stevens and against plaintiff Young is amended so as to increase it by the amount of $500 for attorney's fees. As thus amended, the judgment of the district court is reinstated and made the final judgment of this court.

McCALEB, J., dissents, being of the opinion that the result reached on first hearing is correct.

SUMMERS, J., dissents and adheres to the reasons assigned in the original opinion.

### ON SECOND REHEARING

HAMLIN, Justice:

A second rehearing was granted herein in order that we might reconsider the question of the merchantability of defendant Helen W. Stevens' title to the property involved. A repetition of facts and issues and a chronological listing of earlier legal proceedings, fully set forth in our previous decisions, is not necessary.

The agreement to purchase or sell, dated March 9, 1965, recites that Helen W. Stevens offers and agrees to sell 1228 Arabella Street, single two story, "On grounds measuring about 40' x 120' or as per title"; and that, "The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission." This agreement was the standard form of the Real Estate Board of New Orleans, Inc.

■ It was only after an examination of Mrs. Stevens' title, as described in our opinion on first rehearing,[1] and an examination of a survey made by J. J. Krebs & Sons, Inc., November 15, 1965, that plaintiff realized that encroachments existed on the property. No mention of the encroachments was made in the agreement to purchase or sell. However, such were known or should have been known by Mrs. Stevens at the time the agreement was executed. There is no evidence of record that the encroachments were declared to plaintiff at that time or that he was aware of such when he made a visual inspection of the property. Cf. O'Reilly v. Poche, 162 So.2d 787. We conclude that plaintiff cannot be charged with the duty of seeing the encroachments at the time of inspection or with a knowledge of such after viewing the property.

■■ It is apparent that plaintiff Young and defendant Stevens have been engaged in a lengthy controversy. Mrs. Stevens asserted a third-party demand against Mrs. James Van Buren Gresham, the adjoining property owner.[2] These facts standing alone

1. "Also, a joint stipulation of fact, entered into between the parties for the purpose of the trial, recites: 'A copy of the' survey to which reference is made in the most recent acquisition by defendant, Mrs. Helen W. Stevens, of the subject property, being an Act passed before L. H. Rosenson, Notary Public, dated July 13, 1962, and recorded in the Conveyance Office of the Parish of Orleans, State of Louisiana, in Book 647, Folio 693, is annexed to an earlier Act of Acquisition by defendant, passed before Ralph H. Fishman, Notary Public, on April 1, 1957, and *shows that the encroachments presently upon this property were also in existence at that time.*' (Italics ours)

"True, in the description of the property in the body of the vendor's most recent deed that was executed in 1962 (above mentioned and which was apparently part of a 'sale and resale' between her and a homestead company) it was stated that a 1915 survey shows that the lot commences at a distance of 80 feet from the corner of Prytania and Arabella Streets. But the description further recites that according to a plat dated October 19, 1956, annexed to an act before Ralph H. Fishman, Notary Public, dated April 1, 1957, *the lot commences an actual distance of 81 feet 3 inches* from that corner as shown on said survey. (The discrepancies are also noted in the body of the 1946 deed referred to above.)"

2. In our original opinion, we stated: "Mrs. James Van Buren Gresham, the adjoining property owner, steadfastly refused to remove the encroaching driveway or

are indicative of the fact that Mrs. Stevens' title is suggestive of litigation and is not merchantable. Under the facts as found in our previous decisions, a vendee of Mrs. Stevens who would accept the property in its present condition would be confronted with litigation regarding the removal of the encroachments. "A vendor must deliver title free of encumbrances and suggestion of future litigation, and which is good and merchantable * * *" Treadaway v. Williams, 163 So.2d 911. This Mrs. Stevens cannot do. "While the amount involved is comparatively small, it cannot be said that because of this fact the danger of litigation is not serious. No one can be forced to buy a lawsuit or to take property against which there may be presented a claim which the purchaser may be required to pay." Rodriguez v. Shroder, 77 So.2d 216.

We conclude that Mrs. Stevens' title is suggestive of litigation and is therefore not merchantable. We further conclude that our opinion on original hearing is correct.

For the reasons assigned, the judgment and decree originally rendered herein is approved, reinstated, and made the final judgment of this Court.

HAMITER, J., dissents adhering to the reasons assigned by him on the first rehearing.

McCALEB, J., concurs with written reasons.

McCALEB, Justice. (concurring).

I fully subscribe to the majority holding that Mrs. Stevens' title is suggestive of litigation and therefore not merchantable. Additionally, I am convinced that the title is not merchantable because the vendor cannot deliver title to the land she agreed to deliver, a single two-story house "on grounds measuring about 40′ x 120′ or *as per title.*" According to the vendor's title, which clarifies any indefinite representation in the agreement as to the exact measurements of the land to be delivered, the lot actually measures 40 x 120 feet. However, Mrs. Stevens is unable to deliver this footage in accordance with her promise because of the encroachments resting upon the property.

Viewed in this light, the case is clearly distinguishable from that of Hunley v. Ascani, 174 La. 712, 141 So. 385, on which the majority opinion on first rehearing rested. In the Ascani case the vendor agreed to deliver certain premises situated on " * * ground measuring approximately 30′ x 120′ or, as per title." However, title examination revealed the width of the vendor's lot to be only 26′ 4″, and the purchasers attempted to be released from the contract on the

---

fence on the Prytania Street side of the lot in question. Mrs. Stevens therefore asserted a third-party demand against her

for indemnification in the event it should be held that the encroachments rendered the property unmerchantable."

basis that the measurement of the frontage was less than represented. But the Court correctly held that they were still bound because the vendor was able to deliver everything he promised, that is, exact land frontage "as per title", even though the width of the lot was more than three feet shorter than the approximate width stated in the agreement.

In this case the vendor is unable to comply with her agreement, not because her title shows that she owns less frontage than that approximated in the agreement, but only because the frontage stated in the title cannot be delivered unencumbered due to the encroachments thereon. While it is true that the Court in Hunley v. Ascani resolved that the purchasers could not be relieved of their contract as they had inspected the premises and were satisifed with the frontage of the lot, these observations were unnecessary to the opinion in my view. The contract was clearly enforceable there, as the statement of approximate measurements of the lot was qualified (as here) by the words in the sales contract "or, as per title," and, so long as the vendor was able to convey land measuring in frontage and depth "as per title," he was able to comply with his promise.

Rehearing not considered. See Rule XI of this Court. Hamiter, J., is of the opinion the rehearing should be considered and granted. Alternatively, he entertains the view that since the opinion and decree on the first rehearing did not reserve to Young the right to apply for a second rehearing the application so filed by him, the second rehearing that was granted pursuant thereto, and the decision thereon, were all illegal, null, void, and of no effect (Section 3, Rule XI, Rules of this court); and that, consequently, the decision rendered on the first rehearing became and is the final judgment of this court.