975 So.2d 691 (2008)
Thomas K. SWOBODA and Karen L. Swoboda, Plaintiff-Appellee,
v.
SMT PROPERTIES, L.L.C., Defendant-Appellant.
No. 42,746-CA.
Court of Appeal of Louisiana, Second Circuit.
January 30, 2008.
Rehearing Denied March 13, 2008.
*692 Thomas N. Thompson, Lafayette, for Appellant.
Franklin H. Spruiell, Jr., for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
The defendant, SMT Properties, L.L.C., appeals a judgment in favor of the plaintiffs, Thomas and Karen Swoboda. The trial court awarded plaintiffs $30,308.28 in damages. For the following reasons, we amend and affirm as amended.

FACTS
In 2002, SMT Properties, L.L.C. ("SMT") began construction of a house on Lot 11 in a new subdivision in Caddo Parish. Kevin Schmidt was the sole member and manager of SMT. The subdivision, known as "Lakeside on Long Lake," was owned and developed by AOK, L.L.C. ("AOK"). Robert Aiello was the manager of AOK. The subdivision was subject to a declaration of covenants and building restrictions, which among other things required a setback of at least ten feet from the interior, or side, property lines of each lot. One of the members of AOK, Ronald Turner, individually provided SMT with financing to build the house. During construction, Schmidt allowed 40% of the *693 house foundation to be improperly placed across the property line onto the adjacent Lot 12. This error was discovered by Aiello while driving through the subdivision.
Instead of demolishing the foundation, Aiello suggested that SMT purchase Lot 12 and the two lots were "re-subdivided" into Lots 122 and 123 of Lakeside on Long Lake, Unit 2. After filing the re-subdivision plat, Aiello purported to grant verbal variances reducing the side setback from ten feet, as required by the declaration of covenants, to five feet for both Lots 122 and 123. These variances were never reduced to writing, were not reflected on the re-subdivision plat, and were not a matter of public record. After the house was completed, SMT then allowed a portion of the bricked flower bed, two sprinkler heads and some sod to be improperly placed across the revised property line. This error was not discovered at the time.
In July 2003, Turner, who was not the legal owner of Lot 122, hired a realtor, Lynn Roos, to sell the property. Turner completed and signed a "Seller's Disclosure Statement," which noted the presence of an oil pipeline next door and stated that "Lot 11 has been subdivided thus making it much larger." However, the document did not disclose the variance that reduced the side setback to five feet for both lots. That month, Karen Swoboda was looking for a house in Shreveport and hired Kandy McEachern, a realtor in the same office as Roos. Swoboda looked at the SMT-built house on Lot 122 and was given copies of the declaration of covenants and restrictions and the re-subdivision plat.
After reviewing these documents and the disclosure form, Swoboda instructed the realtor to have the boundaries of the lot marked and signed a contract to buy the house. On August 11, 2003, AOK instructed Charles Coyle, a surveyor, to mark the property corners of Lot 122. AOK paid the invoice for this work.
Later in August 2003, Dr. Thomas Swoboda and Karen Swoboda met their realtor at the house and observed survey stakes, which indicated a property line running at an angle away from the house that appeared to conform with the placement of the flowerbed and sod. At the closing on August 27, 2003, the Swobodas first met Schmidt, who signed the seller's disclosure form without mentioning either the five-foot variance of the side setback or the encroachment of the landscaping and sprinklers onto the adjacent lot. The Swobodas paid $395,000 for the house.
The problem with the west property line surfaced in April 2004, when a prospective purchaser, attorney James Davis, ordered a survey of Lot 123 after he was informed by Aiello of the original foundation problem and the setback variance. This survey reflected that the boundary line was only five feet from the Swobodas' house running through the bricked flower bed, and that two sprinkler heads were located on Lot 123. At that time, the Swobodas first learned of the verbal variances granted by Aiello that subjected their lot to a side setback of only five feet. The Swobodas attempted to buy a strip of land as a buffer along the property line, but the adjacent landowner was unwilling to sell. As a result, the Swobodas bought the entire adjacent lot for $49,950.
In March 2005, the plaintiffs, Thomas and Karen Swoboda, filed a petition for damages against the defendant, SMT, alleging fraudulent misrepresentation. The plaintiffs sought damages including the purchase price of the adjacent lot, interest and attorney fees, but did not seek rescission of the sale or reduction of the purchase price. Following a trial, the district court issued a written ruling finding that although the plaintiffs had failed to prove *694 fraud, the defendant had breached its duty to plaintiffs under LSA-C.C. art. 2529, because the property sold was not of the kind represented by defendant.
Considering the circumstances of the case, the trial court concluded that plaintiffs were entitled to recover one-half of the purchase price of the adjacent lot in the amount of $24,975, closing expenses of $2,500, property taxes of $1,573.28 and homeowner assessments of $1,260. The court declined to award attorney fees. Accordingly, the court rendered judgment awarding the plaintiffs damages in the total amount of $30,308.28. The defendant appeals the judgment.

DISCUSSION
The defendant contends the trial court erred in awarding damages to the plaintiffs. Defendant argues that Article 2529 is not applicable because the property received by plaintiffs did not differ in kind or quality from that described in the sale contract or deed and defendant did not make any verbal representation to plaintiffs about the quality of the lot they purchased.
When the thing delivered by the seller, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the buyer's rights are governed by other rules of sale and conventional obligations. LSA-C.C. art. 2529. A trial court's factual findings will not be reversed unless clearly wrong. A reviewing court does not decide whether the factfinder was correct, but whether its findings were reasonable based upon the record. Stobart v. State DOTD, 617 So.2d 880 (La.1993).
In the present case, the subdivision property was subject to a declaration of covenants, servitudes and building restrictions. The declaration provided that all of the lots would be owned, occupied, improved, sold and conveyed subject to the listed covenants and restrictions. Article five, section four of the declaration provided that no building could be built on any lot "nearer than ten feet (10') from interior property lines." The architectural control committee or AOK could "waive in writing" any setback requirement.
Aiello testified that after the lots were re-subdivided, AOK granted a variance to Lot 122 reducing the side setback to five feet instead of the ten feet required by the declaration of covenants. However, Aiello acknowledged that this purported variance was never reduced to writing.
The declaration of covenants expressly stated that any waiver, or variance, of the setback requirement must be "in writing." Thus, the verbal variance granted to defendant allowing the house on Lot 122 to be built five feet from the property line was not a valid waiver of the requirement for a setback of ten feet. In addition, the defendant never disclosed to plaintiffs the existence of any such variance. Consequently, at the time of sale the defendant represented that the house complied with the setback of ten feet required in the declaration of covenants. Based upon this record, we cannot say the trial court erred in concluding that pursuant to Article 2529, the defendant breached its duty to plaintiffs by delivering a house that was actually only five feet from the property line. The court found that such a deviation was material to plaintiff's decision to buy their home and this finding was not clearly wrong. The assignment of error lacks merit.
Damages
The defendant contends the plaintiffs failed to satisfy their burden of proving they were damaged. Defendant argues that plaintiffs failed to present evidence to show that they suffered an actual *695 loss or to establish the value of any such loss.
Damages are measured by the loss sustained by the obligee and any profit of which he was deprived. LSA-C.C. art. 1995; Cook v. Stowe, 40,372 (La.App.2d Cir.10/26/05), 914 So.2d 1135. An obligee must make reasonable efforts to mitigate the damages caused by the obligor's failure to perform and if the obligee fails to make these efforts the amount of damages will be reduced. LSA-C.C. art.2002. Much discretion shall be left to the court for the reasonable assessment of damages which are insusceptible of precise measurement. LSA-C.C. art.1999.
In the present case, the plaintiffs presented evidence that defendant's conduct created the need to re-subdivide the original Lots 11 and 12 and resulted in the construction of plaintiffs' house five feet from the revised property line. Plaintiffs testified that they suffered financial loss because they were forced to buy the adjacent lot for $49,950 to prevent construction of a building only ten feet from their home, a circumstance which they believed would reduce the value of their substantial investment. The record supports the trial court's finding that the defendant's failure to disclose the material information regarding the setback variance was a significant factor in causing the plaintiffs to incur that additional expense.
In its appellate brief, the defendant contends that even if plaintiffs are entitled to recover damages, any award must be reduced to reflect their own negligence in failing to obtain a survey of their lot and in failing to read the warnings to do so in the documents they signed in completing the purchase of their house. Contrary to defendant's contention, the plaintiffs made a request through their real estate agent that the property owner mark the boundary lines of their lot. The trial court found that the plaintiffs' request that the property lines be marked was the equivalent of a survey in this case, rejecting defendant's assertion that plaintiffs were precluded from recovery. On this record, the trial court's finding was not clearly wrong.
Additionally, the defendant contends the plaintiffs failed to attempt to mitigate the damages suffered as a result of buying the lot with a smaller side setback than required by the declaration of covenants. Defendant argues that under Article 2002 the damage award should be reversed because plaintiffs took no steps to sell or further subdivide the adjacent lot they purchased after learning of the variance.
We note that in its written ruling, the trial court expressly considered the plaintiffs' conduct in assessing damages. The court found that plaintiffs derived some benefit from their purchase of the adjacent lot in that they gained a larger yard and retained the option to further subdivide the property and sell the remaining lot. The trial court noted that plaintiffs had not taken any steps to mitigate their damages by attempting to sell the adjacent lot. The record demonstrates that the trial court considered and weighed the plaintiffs' comparative negligence and lack of mitigation in the award of damages by limiting their recovery to one-half of the price they paid to purchase the adjacent lot.
However, considering the benefit to plaintiffs in maintaining ownership and possession of the adjacent lot, we conclude that plaintiffs are not entitled to reimbursement for the amounts paid in 2005 and 2006 for property taxes and homeowner assessments related to Lot 123. Consequently, we shall amend the award by deleting the amounts of $1,573.28 for property taxes and $840 for homeowner assessments for 2005-2006, reducing the *696 plaintiffs' total damage award to $27,895. In all other respects, the judgment will be affirmed.

CONCLUSION
For the foregoing reasons, the trial court judgment is hereby amended to delete the amount of $2,413.28, and plaintiffs are awarded the sum of $27,895 in damages. The judgment is otherwise affirmed. Costs of this appeal are assessed to the appellant, SMT Properties, L.L.C.
AMENDED AND AFFIRMED AS AMENDED.
GASKINS, J., concurs with reasons.
CARAWAY, J., dissents with written reasons.
GASKINS, J., concurs.
I respectfully concur with the opinion that La. C.C. art. 2529 addresses the situation at hand. Not only did the buyers find that the property was not the kind represented by the seller, the seller's manager also appears to be confused himself about the boundary.
This case is not just about a variance to a covenant. Because of the particular facts of this case, the problems arising out of the variance affect the efficacy of the contract.
Normally, we would rescind the sale or reduce the purchase price to remedy a problem arising under La. C.C. art. 2529. Neither party argues that the sale should be rescinded.
In this case, we have the perfect storm of facts, which makes the remedy an appropriate one. Those factors include:
(1) A variance to the covenant was properly given, but not written, as required.
(2) Landscaping and a sprinkler system visually indicated the lot had a bigger side yard.
(3) After the buyers requested the boundary be marked, stakes were positioned that were consistent with the landscaping.
(4) The character of the neighborhood is one in which the houses are built more than 10 feet apart. Not only was plaintiffs' house five feet from the property line, the prospective house next door would also be five feet.
(5) Because of the seller's negligence, the adjoining lot was much smaller than originally intended. Mr. Davis had refused to sell the plaintiffs a strip of land, because his house would not have fit these even smaller dimensions.
(6) Mr. Davis had already received a variance to build a smaller house than that contained in the covenants. No evidence showed that, after the plaintiffs added 10-15 feet to their side yard, any further variance to house size would be granted or that a viable house could be built on the remaining land.
The trial court fashioned a remedy that protected the value of the house while maintaining the integrity of the subdivision. Had the trial court, instead, reduced the purchase price on the house, it is likely the damages would have been consistent with the amount actually awarded.
I agree with the writer to affirm, as amended.
CARAWAY, J., dissenting.
I respectfully dissent.
There are puzzling aspects of the plaintiffs' action. First, in the "Seller's Disclosure Statement," the seller advised the *697 buyers to "obtain a survey." The inaccurate, ambiguous staking at the site observed by plaintiffs was not a survey and was never clearly shown to be the product of the agents of the seller, SMT. Therefore, though plaintiffs may have recourse against a surveyor, that is not their claim against SMT. Next, the plaintiffs did not seek rescission of the sale of the house even though the flowerbed's encroachment on the adjoining lot (Lot 123) indicates that both parties were in mutual error regarding the object of the sale. Last, when damages are sought against SMT for a flowerbed encroachment, the value of one-half of Lot 123 has no relevance to the measure of those damages which can otherwise be remedied by downsizing the flowerbed.
While I will consider the remedies of rescission and damages below, the majority's error is in finding the wrong breach of the sales contract. The majority concludes that SMT obligated itself to provide a 10-foot setback and only delivered a house set back 5 feet from the side lot line. Under Civil Code Article 2529, this 10-foot setback promise is viewed by the majority as a "specified" or extra "quality" of the object of the sale as represented by SMT.
An examination of the parties' deed and all written representations of the seller reveals no such setback warranty. The deed conveys Lot 122, "together with all buildings and improvements located thereon." It then provides only that the property was "conveyed subject to all recorded servitudes, restrictions, rights-of-way and easements." SMT's deed and other written representations never specify that the house was constructed 10 feet away from the common lot line. When a deed says "subject to all recorded restrictions," that is not a warranty for extra qualities in the home; it is notice of limitations upon the extent of ownership conveyed. With that "subject to" language, SMT did not convey ownership of Lot 122 with complete unfettered use for the plaintiffs, but with limited use. Therefore, this commonly inserted provision in the description portion of the deed relates to the setback restriction, only in that the seller is warning buyer, do not build a structure within 10 feet of the property line unless you get a variance.
The provision of the recorded building restrictions and protective covenants regarding the setback states as follows:
No building or any part thereof, including but not limited to, porches, patios, decks, steps, stoops, verandas, garages or hand rails shall be located, erected, or altered on any Lot in contravention of the applicable setback lines set out on the Subdivision plats, nor nearer than ten feet (10') from interior property lines. Nevertheless, the Architectural Control Committee or Declarant may waive in writing any setback requirements if, in its opinion, the location of said dwelling is aesthetically acceptable and in harmony with other dwellings in the neighborhood.
The waiver or variance process envisioned by this covenant is one that occurs completely outside of the public records. The variance for the setback, which unquestionably was granted in this case, did not just occur by the subdivider's unrecorded agreement for the 5-foot variance. Most importantly, it resulted on the ground by the physical construction of the house. The majority's reasoning implies that a written waiver should have been recorded in the conveyance records even though the recorded building restrictions make no such requirement. To the contrary, the possibility for an unrecorded setback waiver as revealed in the recorded protective covenants required a physical inspection by the purchaser to determine exactly where the house was located on the lot.
It cannot be argued that at the time of this sale, the location of plaintiffs' house *698 encroached upon the setback rights of the owner of Lot 123. In fact, SMT was then the owner of Lot 123. Therefore, as to SMT's general warranty obligation of delivery of peaceful possession of the home on Lot 122 under Civil Code Article 2475, the plaintiffs' home has never threatened any violation of the setback rules of the subdivision. Accordingly, there being no express or implied warranty for a home to be set back 10 feet from Lot 123, and the home posing no encroachment to the setback restriction of the subdivision, SMT did not breach its contract regarding the home's location on Lot 122.
The plaintiffs were, nevertheless, entitled to relief in this case. A claim for the greatest relief could have been made to set the sale aside for the parties' mutual error over what was sold. SMT constructed a flowerbed and placed the lawn sprinkler system partially encroaching on Lot 123. The possibility for rescission of the sale is supported by the jurisprudence. Young v. Stevens, 252 La. 69, 209 So.2d 25 (1967); Hunley v. Ascani, 174 La. 712, 141 So. 385 (1932); Jacobs v. Freyhan, 156 La. 585, 100 So. 726 (1924). The question presented would involve whether the encroaching flowerbed in this case was such a material cause or motive for the parties' agreement to render their contract ineffective for mutual error. In the words of Hunley, supra, did "the proposed vendor [have] a good title to everything the plaintiff saw and wanted to purchase"?
Having chosen not to seek a rescission of the sale for the parties' mutual error, the plaintiffs could claim damages for the alterations necessary to the flowerbed and sprinkler system to curtail their encroachment on Lot 123. Those relatively minor items were attendant to the sale of the home and were not appropriately delivered by SMT. There was a breach of contract for those items. Yet, regarding the measure of damages now applied for this breach of contract, there is a disconnect between the value of one-half the neighboring lot ($27,895) and the expense of a newly reduced flowerbed. This is "apples and oranges."
In summary, the trial court and this court, including myself, agree that the plaintiffs were entitled to relief. Yet, I find that recorded subdivision restrictions do not create the type of warranty obligation recognized by the majority in the sale of a home, certainly when that home poses no violation of the subdivision restrictions which could be enforced against the vendee by his neighbors. Although the plaintiffs may have been successful in totally rescinding the sale for mutual error, they should not be allowed to create a grossly disproportionate damage claim for landscaping revision by purchasing the neighboring lot.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY and DREW, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.